## JOINES v. COMBS et al.

No. 3566.   Opinion Filed May 6, 1913.

Rehearing Denied June 24, 1913.

(132 Pac. 1115.)

1. **CANCELLATION OF INSTRUMENTS—Grounds—Fraud.** A court of equity has jurisdiction to decree the rescission of an executed contract for the sale of lands and the cancellation of a note and mortgage given in payment and security therefor on the ground of fraudulent misrepresentation or concealment of facts relied upon by the grantee respecting the title.

2. **FRAUD—"Actual Fraud."** Actual fraud in the law consists in the positive assertion in a manner not warranted by the information of the person making it of that which is not true, although he may believe it to be true.

3. **APPEAL AND ERROR—Pleading—Ground for Reversal—Amendment.** Amendments to pleadings are largely within the discretion of the trial court, and, to authorize a reversal of a judgment because an amendment was not allowed, there must be

such a showing as produces a reasonable conviction that there was an abuse of judicial discretion.

(Syllabus by the Court.)

*Error from District Court, Canadian County;
George W. Clark, Judge.*

Action by W. S. Combs and wife against U. S. Joines Judgment for plaintiffs, and defendant brings error. Affirmed

*Cruce, Cruce & Bleakmore,* for plaintiff in error.
*Jas. L. Brown* and *Owen & Stone,* for defendants in error.

DUNN, J. This case presents error from the district court of Canadian county, and is an action brought by defendants in error W. S. Combs and Amanda Combs, his wife against U. S. Joines, for the purpose of rescinding a purchase of certain lands, and the cancellation of a note and mortgage given to cover and secure the payment therefor. The claim for rescission is predicated upon the alleged misrepresentation and fraud of the defendant in reference, among other things, to the title to the different tracts of land conveyed to plaintiffs, which representations were denied by the defendant, and on these issues the case came on for trial, resulting in a judgment for plaintiffs, from which the defendant has appealed, and lodged the case in this court for review.

The lands involved consist of 920 acres, for the most part of inherited Indian allotments, reliance for title in which is placed upon deeds executed by the parties purporting to be the heirs of the decendents, and generally without probate proceedings to establish the verity thereof. In addition thereto there is 100 acres, title to which was secured direct from the original allottee, W. M. James, who is enrolled as a full-blood Choctaw, and whose deed to the land was executed subsequent to the date of April 26, 1906, and at a time when his restrictions were unremoved by congressional action. W. S. Combs, one of the plaintiffs, in whose favor the court ruled,

testified in reference to the representations made to him by the defendant Joines that:

"He showed a lot of abstracts, and I don't know no more about them kind of papers than a tom cat would know, and he said everything was clear. * * * Mr. Lester [a friend and agent of Joines] says I will go on his bond for $150,-000, that everything shall be right. I took it that way and supposed that everything was right—a man that had an interest in the bank and 21 sections of land I supposed him to be an honest man. * * * He said the title was good all except that 160 acres that had to be sent up and put through on record. * * * Said everything was straight. Lester said he was as good as gold."

In response to the question, "Anything said about the title being clear of record?" Mr. Combs testified: "He [Joines] said it was all good and straight. Lester looked over, and said it was as good as gold." He further testified:

"Did they furnish you an abstract? A. They had an abstract there. Q. Did you afterwards get possession of that abstract? A. Never did get it; they kept it. Q. Were you afterwards furnished with an abstract by them in any way? A. No, sir. Q. Did you know anything at all about Indian titles? A. No, sir; nothing. * * * I will ask you to state whether or not you relied on his statements as to that being perfectly clear title. A. Yes, sir. Q. Did you have any knowledge to the contrary at that time? A. Not a bit."

The findings of fact and conclusions of law by the court, as far as instructive, are as follows:

"On the 1st day of April, 1907, a verbal contract was entered into between the plaintiffs and defendant, by which the defendant agreed to convey to the plaintiff Amanda M. Combs, by warranty deed, about 900 acres of land which consisted of allotments theretofore made to various members of the Chickasaw Tribe of Indians, and the plaintiffs agreed to execute their promissory note to the defendant for the sum of $26,000, and to secure the same, to execute a mortgage upon certain lands of the plaintiffs, situate in Canadian county. The deed was thereafter executed by the defendant to the plaintiff Amanda M. Combs, and the plaintiffs executed

and delivered to the defendant said note and mortgage, which are the instruments sought to be cancelled by this action.

"At the date of making said verbal contract, the defendant stated to the plaintiff W. S. Combs that his title to all the 900 acres of land, except two small tracts thereof, was good, and that he would soon perfect the title to those two tracts, and that only about 30 days would be required in which to do so. The defendant at that time and at the time he executed the deed believed that the representations made by him with reference to his title to the 900 acres were true, but, as a matter of fact, these representations were not true; the validity of his title to the greater portion of the 900 acres of land was at that time, and still is, in dispute; suits were pending both in the trial and appellate courts to determine the question as to the right of the original patentees or allottees, as well as certain heirs of such patentees and allottees, to convey title to said real estate, and this court entertains serious doubt as to the validity of the defendant's title to a large portion of said real estate at the time the contract to convey the same was made, as well as at the time of the trial of this action.

"The allegations of the plaintiffs' petition, their amended petition, and their second amended petition that the defendant made false and fraudulent representations to the plaintiffs at or before the 1st day of April, 1907, relative to the construction of a certain railroad near the lands, for the purchase price of which the note and mortgage in controversy were given, are not sustained by the evidence, and the defendant was not guilty of any actual fraud in making said contract of sale, or in any representations made by him concerning the construction of such railroad.

"The deed from the defendant to the plaintiff Amanda M. Combs was placed of record by the defendant soon after its execution and prior to the time that the plaintiffs could have carefully investigated the title to the 900 acres of land, as the same was disclosed by the abstract furnished by the defendant. Neither plaintiff has ever been in the actual possession of any of the premises purported to be conveyed by said deed, and within a reasonable time after discovering the defects in the title they brought the action to rescind that contract of purchase and to secure a cancellation of the note and mortgage in controversy here."

The court found as his conclusions of law that:

"The representations of the defendant that his title to the greater portion of the lands purported to be conveyed by his deed was good amounted to a legal fraud, and there is such uncertainty about the title to said land that the plaintiffs ought not to be compelled to accept the same, and were justified in rescinding the contract for their purchase and are entitled to a decree canceling the note and mortgage as prayed by them."

For assignments of error counsel for the defendant present that the court erred in holding that the representations of the defendant amounted to actual or legal fraud and in failing to find that the title to the land defendant had conveyed to plaintiffs was perfect; also in refusing defendant permission to file a supplemental answer at the conclusion of the case wherein he sought to show that since the institution of the suit he had acquired and tendered to plaintiff a good and perfect title to the land referred to in the record as the James allotment. Counsel for defendant take the position that the court failing to find that the title to the land had failed, and finding that the defendant was not guilty of actual fraud in making the contract of sale, the foundation for the exercise of equitable jurisdiction to decree a rescission did not exist. On this question we will say that if the testimony of the plaintiff Combs as to the representations made by the defendant is taken as true, and given all of the probative force which a trial court could give it, there can be no doubt but that the defendant represented to the plaintiff that with the exception stated the title to the lands he was transferring was all good and straight, and also that without investigation he relied upon those statements as giving to him a perfectly clear title. Section 1052, Comp. Laws 1909 (Rev. Laws, 1910, sec. 903), provides:

"Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: (1) The suggestion, as a fact, of that which is

not true, by one who does not believe it to be true. (2) The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true. (3) The suppression of that which is true, by one having knowledge or belief of the fact. (4) A promise made without any intention of performing it; or, (5) Any other act fitted to deceive."

In our judgment the statement of the trial court that there was no actual fraud perpetrated by the defendant Joines upon plaintiffs and that the fraud was legal in its character meant no more than that actual dishonesty was not in the mind of the defendant and that he did not willfully and purposely deceive the plaintiffs in reference to the title which he possessed, and that he believed what he told them, but it is to be noted under subdivision 2 of the paragraph above quoted actual fraud is "the positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true." So, under these circumstances, the legal fraud referred to by the court in its conclusion of law is the actual fraud referred to in the statute. That Combs was wholly unacquainted with Indian land titles, and that he was easily imposed upon, is beyond dispute; that he relied implicitly upon Joines and that Joines knew this is clearly justifiable and inferable from the record. The statements made by Joines to Combs were made for the purpose of inducing him to believe and act upon them, and that Combs did so, he testifies and none deny it, so that so far as Combs is concerned the question of any dishonest motive on the part of Joines is not material, for whether honest or dishonest the effct on him was the same, and, should loss to either follow, it should be to the one who was at fault, and not the one upon whom the imposition was practiced. Counsel for defendant sharply direct our attention to the distinction existing in the rule obtaining when rescission is sought of an executory contract or when specific performance is invoked as contradistinguished from the situa-

Vol. 38—25.

tion presented by the case at bar where the contract has been executed; and we are not unmindful thereof. The correct rule obtaining in such cases as this is laid down in section 338, Maupin on Marketable Title to Real Estate (2d Ed.), as follows:

"The jurisdiction of a court of equity to rescind a contract for the sale of lands which had been executed by a conveyance, on the ground of fraudulent misrepresentation or concealment of facts respecting the title, is clear and undoubted. We have already seen what acts, conduct, and declarations of the vendor in relation to the title during the negotiations of the parties are to be deemed fraudulent; also, when the purchaser will be deemed to have waived his right to rescind because of the fraud, and that fraud, of which he was ignorant, cannot be regarded as merged in the conveyance which he accepts; also when, the purchase money may be detained or recovered back, or damages recovered at law, or the collection of the purchase money stayed by injunction, in cases of fraud. We have seen that one who has been induced to accept a conveyance of lands through the fraudulent representations of the grantor respecting the title is not limited to his action on the covenants contained in the deed. Equity has concurrent jurisdiction with courts of law in cases of fraud, and the objection that a grantee, seeking rescission of the contract, should sue at law on his warranty, or in trespass for deceit, will not be entertained"—(citing numerous authorities).

To the same effect is the rule laid down in 2 Warvelle on Vendors (2d Ed.) par. 836, p. 980, where, after discussing the effect of misrepresentations upon executory contracts, stated the same as follows:

"An executed contract presents different features. The vendee is always chargeable with notice of the facts furnished by the record, and presumably purchases with the knowledge afforded by such notice, and accepts the title subject to whatever infirmities the records may disclose, unless his conduct has been differently influenced by some act of the vendor. But though it is his duty to investigate the title prior to purchase, and to ascertain the rights of others when such rights are actually or constructively brought to his notice, he

also has a right to rely upon the statements of the vendor in relation thereto, and in so doing to forego an examination. If therefore, through misrepresentation or concealment, or by reason of the arts or devices of the vendor, whereby he has been induced to refrain from proper search, he accepts an invalid or defective title, a proper ground for equitable relief is established, and the contract may be rescinded."

And at paragraph 846, p. 996, this same writer says:

"In its legal signification misrepresentation is usually a fraudulent artifice resorted to for the purpose of enhancing the price or more speedily effecting a sale of the commodity offered. The element of fraud, however, is only incidental; for, as a rule, all representations which are untrue and which materially affect the value of the property which forms the subject of the contract will furnish grounds for a rescission, even though they may not have been made with a fraudulent intent. Indeed, the intent of the person making a misrepresentation for the purpose of inducing a purchase of property is wholly immaterial. A party selling land or other property must be presumed to know whether the representations made by him are true or false; if he does know them to be false he is guilty of positive fraud, but if he does not know it must be from gross negligence; and false representations which are material, made under such circumstances, although founded on mistake, in contemplation of a court of equity, constitute fraud, and will justify the rescinding of the contract."

The finding of the court being adequately supported by the evidence and establishing the actual legal fraud, misrepresentation, or concealment of facts, the foundation for the exercise of the jurisdiction here invoked, the remaining question necessarily is, Is the decree under the facts found equitable? Counsel have elaborately briefed this case and the court has had the benefit of able oral argument, and, after carefully considering the entire matter and all the claims made by plaintiff in error, we are constrained to concur in the decree of the trial court allowing the prayer of the plaintiff, believing that it does substantial equity and justice in the case.

The title to the 160 acres of land conveyed by William James in our judgment wholly failed and was void, and we

are not able to say that the action of the court, after the case was concluded, denying the defendant an amendment of his answer setting up the tender of the deed of the heirs of the deceased allottee was an abuse of judicial discretion, the rule being that amendments to pleadings are largely within the discretion of the trial court, and to authorize a reversal of a judgment because an amendment was not allowed there must be such a showing as produces a reasonable conviction that there was an abuse of judicial discretion.

Finding no error in the record, therefore, the judgment and decree of the trial court is affirmed.

All the Justices concur.