## HENRY v. COLLIER et al.

No. 8361—Opinion Filed Dec. 4, 1917.

Rehearing Denied Jan. 8, 1918.

(169 Pac. 636.)

**1. Fraud—"Fraudulent Misrepresentation.**

The gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished, the means of producing it are immaterial.

**2. Same—Actionable "Fraud"—Elements.**

To constitute actionable fraud there must be made to appear, first, that the defendant made a material misrepresentation; second, that it was false; third, that when he made it he knew it was false and made it recklessly without any knowledge of its truth or as a positive assertion; fourth, that he made it with the intention that it should be acted upon by the other; fifth, that the party to whom it was made acted in reliance upon it; and, sixth, that injury was suffered thereby.

(Syllabus by Hooker, C.)

Error from District Court, Bryan County; Jesse M. Hatchett, Judge.

Suit by Rosa Collier and others against S. W. Henry. Judgment for plaintiffs, and defendant brings error. Affirmed.

Hatchett & Ferguson, for plaintiff in error.

John A. MacDonald and Utterback & MacDonald, for defendants in error.

Opinion by HOOKER, C. The petition filed in this cause alleges that Rosa Collier is the owner of, and entitled to the immediate possession of, 60 acres of land in Bryan

county, accurately described therein, and that on or about the 14th day of October, 1914, she entered into an oral contract with S. W. Henry to transfer by warranty deed to him said property for the sum of $200 cash, and for the further consideration of the transfer to her of 40 acres of land in Atoka county, Okla., and that at the time of making of said contract, and as an inducement thereto, the said S. W. Henry represented to her that the 40 acres of land in Atoka county was worth the sum of $1,000. And thereupon in compliance with the terms of said contract the said Henry executed a warranty deed covering said 40 acres of land to her and paid substantially the cash consideration; that the said Henry as an inducement to said trade, and with the intent to deceive and defraud her, did falsely and fraudulently represent to these plaintiffs that the said 40 acres of land in Atoka county was worth $1,000 and had timber thereon of the approximate value of $100; that relying upon the representation as to the value of said property a deed was made to said Henry for said 60 acres of land in Bryan county, which was duly accepted by him and placed of record; that said land in Atoka county was worthless, and as soon as the same was discovered the plaintiff offered to rescind said contract, but that the said Henry refused so to do; that the 60 acres of land in Bryan county was worth the sum of $2,400 and that the consideration for this trade has failed, and that the plaintiff tenders back a deed to said Henry to said 40 acres and demands the rescission of said contract. Upon the issues being formed this cause was tried to the court and a judgment rendered in favor of Rosa Collier and against S. W. Henry, rescinding said contract, and placing the parties in status quo.

It appears from the evidence here that Rosa Collier owned this 60 acres of land situated in Bryan county, and that she was at that time an inexperienced woman about 19 years of age, and was the wife of one J. C. Collier, who was also inexperienced in the business affairs of life. Rosa Collier had received this property as her allotment, and she had disposed of all her inheritable land except this 60 acres, and at this time was living with her husband in a tent across Red river in the state of Texas, as, on account of some trouble in which he had become involved, he was at that time a fugitive from justice from the state of Oklahoma, and the family was in dire circumstances. About the only property they owned was this tract of land, and, being desirous of selling it, they communicated with Henry, who was vice president of a bank in Oklahoma, and

to this end sent a man by the name of Grant to Henry's home for the purpose of having him come to them at the place where they were camping in Texas for the purpose of entering into negotiations with him in regard to a sale of this property. At the first request he did not go, but finally went to them, and after some conversation declined to buy the property, for the reason that he said he did not have the money with which to do so, but offered to them a trade of 40 acres of land which he owned in Atoka county, and $200 in money. Neither Rosa Collier nor her husband had ever seen this property of Henry's in Atoka county, and in order to have some idea as to the value of the land, they inquired of him as to its value and what he asked for it. The valuation of the 60 acres of land belonging to Rosa Collier in Bryan county was agreed upon at $1,200, and the evidence here establishes that it was worth that much, if not more, so when the question was propounded to Henry as to what valuation he placed upon his 40 acres of land in Atoka county, he told them $1,000, and it is here claimed that Rosa Collier believing this valuation to be true and correct, and believing further that the property was bottom land, agreed to and did make this trade with him, and immediately thereafter she and her husband went to Atoka county for the purpose of inspecting this 40 acres of land, and found the same upon their arrival to be ridge land of an inferior quality, without any timber, and of a valuation not to exceed $200.

In 20 Cyc. p. 14, it is said:

"The gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished the means of accomplishing it are immaterial. The simplest and perhaps the most frequent case of fraud is that consisting of telling a deliberate and intentional falsehood as to a material fact. Where a person makes such a misrepresentation, intending that another shall act upon it, and the latter does act upon it to his injury, it is perfectly clear that an action of deceit will lie. Fraud may be as effectually perpetrated by acts as by words, and it is settled law that acts or conduct calculated and intended to produce a false impression in the mind of another party are equivalent to actual misrepresentations."

And the same authority, at pages 51, 52, 53, reads as follows:

"But it cannot be said as a matter of law that the value of property to be sold is never a material fact. It is only because statements of value can rarely be supposed to have induced a purchase without negli-

gence on the part of the purchaser that the courts have laid down the foregoing principle; and in a plain and aggravated case of cheating the vendor may be held liable notwithstanding that his misrepresentation was one as to the value of the property. Representations as to the market value of property of the kind to be sold have been held to be statements of fact, not of opinion, and to be actionable where the purchaser is ignorant of the true market value, or where the parties expressly make the truth of the seller's statements an essential element of the bargain."

Revised Laws 1910, subdivision 5, section 903, provides as follows:

"Actual fraud, within the meaning of this chapter consists in any of the following acts, committed by a party to the contract, or with his connivance with intent to deceive another party thereto, or to induce him to enter into the contract. First. The suggestion, as a fact, of that which is not true, by one who takes it to be true. Second. The positive assertion in a manner not warranted by the information of the person making it, or that which is not true, though he believe it to be true. Third. The suppression of that which is true, by one having knowledge or belief of the fact. Fourth. A promise made without any intention of performing it; or, fifth, any other act fitted to deceive."

And, under section 905 thereof, actual fraud is always a question of fact.

This court, in the case of Wingate et al. v. Render, 58 Okla. 656, 160 Pac. 614, said:

"A wide latitude is allowed in cases of fraud, and circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof. Castle et al. v. Bullard, 23 How. 172, 16 L. Ed. 424; Leedom et al. v. Earls, Fur. & Car. Co., 12 Utah, 172, 42 Pac. 208. * * * On the whole, we are entirely satisfied that there was sufficient evidence adduced at the trial to support the verdict of the jury. * * * In reaching this conclusion we assume the soundness of the rule contended for by the plaintiffs, that to constitute actionable fraud, it must be made to appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; (6) that he thereby suffered injury; and (7) that all these facts must be proven with a reasonable degree of certainty, and all of them must be found to exist; the absence of any of them would be fatal to a recovery. 20 Cyc. 13."

In Miller v. Wissert, 38 Okla. 808, 134 Pac. 62, this court said:

"The rule is that if, with intent to deceive either party to a contract of sale conceals or suppresses a material fact, which he is in good faith bound to disclose, this is evidence of an equivalent to a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the whole truth. The gist of the action is fraudulently producing a false impression upon the mind of the other party; and, if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff. * * *"

And in the case of Joines v. Combs et al., 38 Okla. 380, 132 Pac. 1115, it is said:

"The statements made by Joines to Combs were made for the purpose of inducing him to believe and act upon them, and that Combs did so, he testifies and none deny it, so that so far as Combs is concerned the question of any dishonest motive on the part of Joines is not material, for whether honest or dishonest the effect on him was the same, and, should loss to either follow, it should be to the one who was at fault, and not the one upon whom the imposition was practiced."

And it is further said therein:

"The element of fraud, however, is only incidental; for as a rule all representations which are untrue and which materially affect the value of the property which forms the subject of the contract will furnish grounds for a rescission, even though they may not have been made with a fraudulent intent. Indeed, the intent of the person making a misrepresentation for the purpose of inducing a purchase of property is * * * immaterial. A party selling land or other property must be presumed to know whether the representations made by him are true or false. * * *"

Kerr on Fraud and Mistake, page 42, says:

"All surprise, trick, cunning, dissembling, and other unfair ways that is used to cheat any one is considered as fraud."

And in R. C. L. vol. 12, p. 319, it is said:

"The rule that fraud cannot be predicated of a failure to disclose facts where the information is as accessible to one party as to the other, and the truth may be ascertained by the exercise of reasonable diligence, does not justify a resort to active deceit or fraud, and hence does not apply where a party, in addition to nondisclosure uses any artifice to throw the other party off his guard and to lull him into a false security. Therefore each party to the contract must take care not to say or do anything tending to impose upon the other. The concealment becomes a fraud where it

is effected by misleading and deceptive talk, acts, or conduct, or is accompanied by misrepresentations, or where in addition to a party's silence there is any statement, word or act on his part which tends affirmatively to a suppression of the truth, or to a covering up or disguising of the truth, or to a withdrawal or distraction of a party's attention from the real facts; then the line is overstepped and the concealment becomes a fraud."

Upon an examination of the instant case, we find that Rosa Collier and her husband had not seen the 40 acres of land belonging to Henry in Atoka county; they were not acquainted with its value, and that it was agreed between these parties that her land had a reasonable value of $1,200, if not more, and that this trade, if made, was to be made upon the basis of her receiving from Henry property of that value, so in order to arrive at a conclusion as to the value of this Atoka land belonging to Henry, they asked him at what he valued this 40 acres of land, after he had described it to them. This was not an idle inquiry, but was made by her to enable her to arrive at an adjustment of values in this trade. Of this fact Henry was cognizant, and in his answer thereto he was neither fair, honest, nor frank, but adroitly replied, attempting to avoid representation or a warranty of saying that he asked $1,000 for it. The purpose of his words was to make her believe that this land was worth $1,000. He knew that, unless he created this impression upon her mind, he probably could not make this trade upon the basis he had offered, and by his answer he succeeded in creating the impression upon her mind that this land was of the value at which he fixed it. This land never had that value, and Henry comes into court and only offers $400 while the highest valuation which we can place thereon does not exceed the sum of $200. Henry had owned the land for five years, and was never impressed with it sufficiently to go and look at it and it is an admitted fact that it cost him not to exceed $75. And it is fair to assume that, when he answered this inquiry that he placed a valuation thereon of $1,000, or asked that for it, his answer was the basest of deception, given for the express and manifest purpose of deceiving and defrauding Rosa Collier by creating upon her mind the impression that this 40 acres of land was worth the fabulous sum which he asked. This it did, and the trial court was unquestionably right in refusing to approve such questionable conduct, and in condemning the same as unfair and unconscionable.

We are aware that a party has the right to sell his property at any figure he pleases where the transaction is free from fraud, and that mere inadequacy of price is not of itself sufficient to justify a court of equity to rescind contracts solemnly made by the parties, yet, as said by the court in the case of Burner et ux. v. Cobb et al., 37 Okla. 228, 131 Pac. 165, L. R. A. 1916D, 377:

"In volume 2, Pomeroy's Equity Jurisprudence (section 926 et seq.), this subject is treated in an able and exhaustive manner, and the general rule there laid down for cases of this sort seems to be that, while mere inadequacy of consideration is not sufficient ground, in itself, for refusing the remedy of specific performance, yet when the inadequacy is so gross as to amount to fraud, or in the absence of other circumstances to shock the conscience and furnish satisfactory and decisive evidence of fraud, it will be a sufficient ground for canceling a conveyance or contract, either executed or executory. Section 927. This rule is based upon the theory that fraud, and not inadequacy of price, is the sole and only reason for the interposition of equity. In the note to this section in the treatise above referred to, it is said: 'The rule had its origin at a time when fraud was generally inferred by presumptions of law, and often by conclusive presumptions. In the present condition of the law on the subject of fraud, this mode of formulating the rule seems to be erroneous. The principle is now almost universally adopted that fraud is a fact inferred like other conclusions of fact, from the evidence; no rule of law can, therefore, be laid down as to the amount of inadequacy necessary to produce the resulting fraud. Inadequacy of consideration may be evidence of fraud, slight or powerful, according to its amount and other circumstances. When it is satisfactory and decisive evidence, when from the proof of inadequacy the court or jury are convinced that fraud as a fact did exist, then the relief is granted. Instead, therefore, of repeating the usual formula which has been handed down for generations, that the inadequacy must be conclusive evidence of fraud, I have said in the text that it must be satisfactory and decisive evidence: the former mode represented fraud as the result of a conclusive legal presumption; the latter treats it as a conclusion of fact drawn from the evidence, and is therefore in perfect harmony with the theory which now prevails in most, if not all, of the states. The following seems to be the true rationale of the doctrines concerning inadequacy of price. Whenever it appears that the parties have knowingly and deliberately fixed upon any price, however great, or however small, there is no occasion nor reason for interference by courts; for owners have a right to sell property for what they

please, and buyers have a right to pay what they please. See Harris v. Tyson, 24 Pa. 347, 360, 64 Am. Dec. 661; Davidson v. Little, 22 Pa. 245, 257, 60 Am. Dec. 81. But where there is no evidence of such knowledge, intention, or deliberation by the parties, the disproportion between the value of the subject-matter and the price may be so great as to warrant the court in inferring therefrom the fact of fraud. Such a gross inadequacy of disproportion will call for explanation, and will shift the burden of proof upon the party seeking to enforce the contract, and will require him to show affirmatively that the price was the result of a deliberate and intentional action by the parties; and if the facts do prove such action the fact of fraud will be more readily and clearly inferred."

Viewing this entire record we have reached the conclusion that the statement made by Henry to Rosa Collier as to what he valued or asked for the land in question, under the peculiar circumstances of this case, constituted a representation which was material to the subject-matter of the trade; that the same was false and known by Henry not to be true at the time he made it, and made by him with the intention of inducing Rosa Collier to believe it; that she did believe it and relied upon it, and believing the same to be true made this contract, and as a result of which she has suffered injury; all of which is conclusively established by the evidence here.

The judgment of the lower court is affirmed.

By the Court: It is so ordered.