## HARRIS v. GRAHAM.

No. 16211—Opinion Filed March 2, 1926.

### 1. Damages—Fraud—Pretending to be Physician.

In an action for damages based upon fraud, in pretending to be a physician and prescribing a sure remedy for a disease, resulting in personal injury to the plaintiff, if there is any competent evidence tending reasonably to support the verdict of the jury, the judgment rendered pursuant thereto will not be disturbed by this court on appeal.

### 2. Same—Instructions of Court on Fraud.

In an action as above stated, it is not error, but correct, for the court to instruct the jury that, if they find from the evidence that the defendant has been guilty of fraud toward the plaintiff, they should find for the plaintiff, and in determining the amount of damages sustained they may take into consideration any injury to plaintiff's health, any pain or suffering caused by the fraudulent acts of the defendant; and it is not error, but correct, for the court to instruct the jury that they may take into consideration the facts and circumstances, if any, tending to show that plaintiff's disease was aggravated, or whether proper treatment thereof was delayed or made impracticable.

### 3. Same—Instructions—Practice of Fraud.

In an action as above stated, it is not error, but correct, for the court to charge the jury, if they find from the evidence that the defendant practiced a fraud upon the plaintiff in pretending to be a physician, and treated her to her injury, and she submitted to the treatment in reliance upon such fraud, then they should find damages in such amount as the evidence showed to be the result of such fraud.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by Mary A. Graham against James M. Harris for damages. Judgment for plaintiff, and defendant appeals. Affirmed.

N. E. McNeill, for plaintiff in error.

Ellis A. Robinson and Quincy J. Jones, for defendant in error.

Opinion by THREADGILL, C. This was an action for damages by defendant in error as plaintiff against the plaintiff in error as defendant, and we will refer to the parties in this opinion as they appeared in the trial court.

On May 16, 1923, plaintiff filed her petition in which she alleged, in substance that about October 19, 1922, she was afflicted with a cancerous growth upon her left breast, which at that time was curable, and on said date came to the office of said defendant, which was located near the city of Tulsa, to consult him as to her affliction; that he had, for a long time prior thereto, held himself out as a physician and surgeon who was able to treat and cure cancers; that she consulted him and he diagnosed her case by rubbing the fingers of his left hand along on her left arm, and then informed her that she did not have a cancer; that she did not have any "virus" in her blood; that it "takes four degrees for cancer"; that she had a growth that would develop into a cancer if left alone without treatment; that she also had kidney trouble; that he showed her two 16-ounce bottles filled with a reddish fluid, and said the fluid was "oil of radium," and the two bottles contained sufficient medicine to cure her; that the two bottles were worth $125; that she might have to take one-half a bottle more; that she could rub a little of the one bottle on the surface of the growth every day and take two teaspoons full every day internally; that she paid him the $125 for the two bottles of medicine and proceeded to follow his directions, and when she had taken about one-half of it during the six weeks following, she returned to him, and, upon examination he advised her she was improving and would be well in a short time; that she continued the use of the said medicine during the next three weeks, taking it all as directed; that she again returned to his office for further examination, and he ran his fingers along her left arm, and in an excited voice exclaimed in alarm: "My God, woman, what have you been doing? There is virus in your blood now." He offered to furnish her more of the "oil of radium" of a "higher specific," but the same would cost her $45, but if she would wait about a month he would furnish it for nothing; that she returned in about a month, and he would not examine her and would not give her any attention, that his secretary gave her a bottle of medicine and advised her to come back in about a week, which she did.

On this visit he told her she was doing all right, but she must have more medicine for the "virus in the blood" and which had set up in the other breast, and must have the "higher specific" to cure her; he demanded a check for $45, which she gave for a bottle of the "higher specific"; that her husband refused to allow the bank to honor the check; that defendant came to see her about it, was very angry, used profane language; said the government was backing him; that he was worth $50,000, and he would spend all of it before he would allow plaintiff to stop payment on said check. Plaintiff alleges that the statements and claims of defendant as a physician were false and fraudulent, and made with corrupt design to cheat and defraud plaintiff, and to obtain money from her without any consideration; that he was not a physician or surgeon; that he had no experience, knowledge, or skill required by law for the practice of medicine; that his pretentions as a physician, and his examination and advising her, were all in pursuance of a malicious and fraudulent design to cheat and defraud her and extract money from her, well knowing that he could not render her any assistance as a physician; that by reason of said acts of defendant, all of which she relied upon, she was caused to neglect proper medical attention, and her disease grew worse until too late to obtain a cure, and which said acts were the proximate cause of said malady becoming incurable. She states that she is entitled to exemplary damages and that by reason of the acts of the defendant, as above stated, she is entitled to damages in the sum of $10,000, for which she prays judgment. Defendant filed answer consisting of general denial, except certain facts admitted. He admitted that he was a physician; that plaintiff came to him for treatment, and he diagnosed her case, and gave her proper treatment and direction, but she failed to follow his directions. He further pleads that he had been successful in his treatment of cancer and other diseases. There was a reply of general denial. The issues as thus made up were tried to a jury April 2, 1924, and resulted in a verdict in favor of plaintiff for $7,500 as actual and $2,500 for exemplary damages, and the court rendered judgment accordingly, and the defendant has appealed asking that the judgment be set aside and a judgment rendered in his favor.

There are several assignments of error but only two are urged by defendant.

1. The first is that the evidence is not sufficient to show that the fraud and deceit

complained of in the petition were the cause of any injury to plaintiff, except the loss of the $125 expended for the "oil of radium." We cannot agree with this contention. Defendant stated in his answer that he was a physician; that plaintiff came to him for treatment; that he prescribed proper treatment for her, but she failed to follow his directions. This was his affirmative defense. The evidence shows that he was not a physician under the laws of this state, but he held himself out by his acts as a physician. His secretary, in the front part of the office, called him "doctor"; his attorney in representing him, in his defense. called him "doctor." In examining the plaintiff he spoke of successful cures performed by him for cancer. He said that the two bottles of medicine called "oil of radium" would cure her, she might have to take another one-half bottle, but the treatment would effect the cure. He diagnosed her case by rubbing his fingers along the left arm instead of examining the cancerous growth. He said she did not have cancer, no "virus" in the blood, she lacked "two degrees of cancer" he said, but without treatment it would develop into cancer. About six weeks after this, and after she had used the two bottles of "oil of radium," when she went to him for further advice, again rubbing his fingers along the left arm he declared she had "virus" in her blood, and the right breast was becoming infected, and advised "oil of radium" of a "higher·specific." The evidence further shows that she rubbed the medicine on the cancerous growth, as defendant directed. and it gave her pain and caused a bloody substance to exude from the growth, and the cancer continued its development as before, and, at the time the case was tried, was pronounced by physicians as incurable. The evidence further shows that the "oil of radium" was unknown to medical science. We think the evidence was sufficient to show that the defendant was not a physician; that his manner of diagnosing was absurd; that the plaintiff was a woman about 62 years of age; she was a plain country woman with very limited intelligence; that she trusted the advice of the defendant as a physician, and relied upon his treatment to cure her; that the treatment he gave her, was a deception and without any curative merits; that it cause her pain and aggravated the disease and caused delay in seeking other treatment. until the cancer reached the incurable status. and we think the jury was warranted in finding from the evidence the the defendant practiced fraud and deceit on the plaintiff to get money from her, knowing that the remedy he offered was worthless as a curative agency, and this remedy was not only worthless, but aggravated the development and caused her to suffer, and all of the acts and pretentions of the defendant were the proximate cause of her delay and failure to obtain scientific and skillful treatment until it was too late.

In the case of Henry v. Collier, 69 Okla. 24, 169 Pac. 636, this rule stated:

"The gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished, the means of producing it are immaterial." See, also, 26 Corpus Juris 1067.

2. In the second place defendant complains of the following instruction to the jury:

"If you find from the evidence, that the defendant, under the instructions given you, has been guilty of fraud towards the plaintiff, then you will find for the plaintiff, and, in determining the amount of such verdict, you may take into consideration any injury to plaintiff's health which was caused thereby and any pain and suffering which you find from the evidence was caused by the acts of the defendant. You may further take into consideration the facts ,and circumstances. if any, tending to show that the disease, from which the plaintiff was suffering. was aggravated, or made worse, or whether proper treatment thereof was delayed or made impracticable."

Defendant contends that this was not a correct rule for measuring damages in the case. Defendant contends that instead of this instruction the court should have given instructions Nos. 1 and 2, requested by him, which were as follows:

"1. You are instructed that treatments of cancer by one of a certain belief or theory of treatment. when charged with fraud and deceit in damages, can only be judged as to whether he was guilty by these theories which were accepted by the authorities in that peculiar class of treatment, and not by treatment or theory of some other and different theory."

"2. You are instructed that in no event can you find damages in this case in any amount in excess of the actual value with which she parted. together with interest thereon at six per cent. per annum from the time at which she parted with such value until this date."

We do not think there is any merit in defendant's contention that the court committed error in refusing to give his instruction No. 1. because there is no evidence

whatever to support any theory claimed by defendant. He was a violator of the law and guilty of a misdemeanor in attempting to practice medicine without complying with the requirements of the statutes to authorize one to practice medicine, and it cannot be said that he had any theory as to the practice of medicine in defense to the plaintiff's cause of action. As to the second instruction requested by defendant, as a substitute and correction of instruction No. 6, complained of, it is based upon the contention that plaintiff did not claim any damages by reason of injury to her health, pain or suffering, or aggravation of the disease, but only that the fraud of the defendant caused her to neglect proper treatment. The trouble with this contention is that it is not a correct statement of the facts, as shown by plaintiff's petition and evidence in the case. So it comes to pass that defendant's arguments, which take up the greater part of his brief in discussing the questions urged and the authorities cited in support of the same, are inapplicable. We think the instruction complained of fairly states the law applicable to the facts in the case. The injury resulting from the conduct of the defendant was not in the nature of a property loss, but a personal injury. The rule given by the court in instruction No. 6 is supported by the holding of this court in the case of St. Louis & San Francisco Ry. Co. v. Clark, 104 Okla. 24, 229 Pac. 779. In the syllabus this rule is stated:

"Where wrong has been committed against the person, accompanied by wanton insult and consequent humiliation, such pain and anguish may be in the nature of physical injury and is a question of fact for the jury."

In the text the court says:

"We do not think it makes any difference, in this particular class of cases, whether the damages resulting from the wrongful act be considered general or special, if it appears that the injury was the direct and natural result of such wrongful act and without reference to the special character, condition, or circumstances of the person wronged."

This holding was based on the general rule laid down in 8 R. C. L. 429, 430 and the cases cited thereunder.

3. In the third place defendant complains of the court's instruction to the effect that, if they found from a preponderance of the evidence that the defendant was not a licensed physician, and held himself out and represented himself to plaintiff to be a practicing physician, and such representations were false, and plaintiff relied upon the representations, and as a result thereof suffered injury, then they should find for the plaintiff in such sum as the evidence showed she was damaged. We do not think there is any merit in this contention. It is fundamental that one should not by any fraud or deceit mislead another to his injury without being liable for such injury.

Section 5969, Compiled Statutes 1921, provides:

"Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."

Section 5970, Id., provides:

"Detriment is a loss or harm suffered in person or property."

Section 5979, Id., provides:

"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant."

Finding no error in the record, we are of the opinion that the judgment of the trial court should be affirmed.

----

### On Rehearing.

RILEY, J. Upon the filing of additional briefs and after an oral argument, a rehearing has been granted in this cause, and the same is now upon the merits.

It is conceded that plaintiff below is entitled to a judgment in the sum of $125, for money expended in the purchase of the so-called "oil of radium." It is evident that the defendant below held himself out to be a physician. In his answer it is pleaded:

"Defendant admits that he is a physician, and that plaintiff came to him for treatment and that he diagnosed her case, and gave her proper treatment and directions, but says that plaintiff failed to follow his directions."

In Feige v. State, 11 Okla. Cr. 49, 142 Pac. 1044, it was held that one who is not licensed to practice medicine as provided by law can be prosecuted for publicly professing himself to be a physician and prescribing for the sick.

The evidence disclosed that the defendant below was not licensed to practice medicine.

He admits having diagnosed plaintiff's case; he furnished a remedy; he guaranteed a cure, and while he collected $125 for the "harmless concoction" and not directly for the diagnosis and treatment, he did so collect it indirectly, and he thereby violated the provisions of section 8818, C. O. S. 1921, wherein it is provided:

"Every person shall be regarded as practicing medicine, * * * who shall for a fee or compensation treat disease * * * by any drugs, surgery, manual or mechanical treatment. * * *"

And it is further provided that any person who shall render such professional services without complying with the provisions of the act by being in possession of an unrevoked license to perform such practice shall be guilty of a misdemeanor.

The defendant below manually, by feeling of plaintiff's arm and examining her, diagnosed her disease and prescribed a treatment therefor. He is, therefore, liable in civil damages for the detriment suffered by reason of his having violated an express statute. Lafayette v. Bass, 122 Okla. 182, 252 Pac. 1101; Hobbs v. Smith, 27 Okla. 830, 115 Pac. 347.

The difficulty occurs on the question as to the extent of his liability. Did the acts of the defendant cause the plaintiff to neglect proper medical attention until too late to obtain a cure? Was her disease curable at the time she secured the services of defendant?

Dr. Murdock, a reputable physician, testified (C.-M. 98) that in 1922 he examined the plaintiff, (C.-M. 104) that the examination occurred "two years ago"; (C.-M. 91) that the examination occurred about three years ago the first time, and that he ascertained that she suffered from cancer and that he recommended an operation, and that this was more than a year before plaintiff went to the defendant. On page 92 of the record the following testimony appears:

"Q. State to the jury, Doctor, what you would say as to the possibility of a cure now as compared with—say, October, 1922.

"Mr. Biddison: Objected to as irrelevant and immaterial.

"The Court: Overruled.

"Mr. Biddison: Exception.

"A. At that time I think the patient probably could have been cured, because we could define no large glands up under the arm and the mass itself was freely movable —could be removed. Of course, if it had spread further up into the liver, it would not have done any good, but it evidently had not done that, because she has lived this long and now it is an inoperable case; it has gone into the nodules of the skin. We don't know where they are—may be some in the liver, some in the kidney, some in the brain—she is helpless and an inoperable patient at the present time."

As to whether or not plaintiff could have been cured by the proper medical attention at the time she engaged the services of Harris, in addition to the testimony of Dr. Murdock, there is that of the plaintiff wherein she testified that when Dr. Harris examined her he said: "You lack two degrees of having cancer. There is no cancer without virus in the blood and you have not got that, but it will be cancer if it goes on."

Plaintiff spent the time from October to January taking defendant's treatment, and the evidence showed that she grew worse under his treatment.

The amount of damage is not certain. That was a question for the jury. The perplexing question is whether the acts of the defendant were the proximate cause of the detriment.

The rule against a recovery of uncertain damages generally has been directed against uncertainty as to cause rather than uncertainty as to the measure or extent. 17 C. J. 756.

The wrong complained of is the violation of an express statute in the pretended practice of medicine. The damage claimed is an injury resulting by reason of preventing plaintiff from securing proper medical attention. The question is then, as to the breach of the statute, was such damage the natural, probable, and approximate result of the acts of defendant? The purpose of the statute was to prevent unskilled persons from preying upon an unsuspecting public and to eliminate the detriment that might be caused by malpractice. Hence, a person violating the statute does so with knowledge that one of its natural and probable consequences may be detriment caused both in pain and suffering and in neglect of proper medical attention.

In Hansen v. Kemmish (Iowa) 208 N. W. 277, 45 A. L. R. 498, it was held:

"A general statutory duty is ordinarily for the benefit of all persons who are likely to be exposed to injury from its nonobservance."

We are inclined to the belief that the opinion by the Commission is correct and

that a proper conclusion is reached. The order granting a rehearing is therefore vacated and the petition for rehearing is hereby denied.

BRANSON, C. J., and PHELPS, LESTER, CLARK, and HEFNER, JJ., concur.

HARRISON and HUNT, JJ., absent, not participating.