Jack BARNES, Appellee,

v.

Carl D. McKINNEY, Appellant.

No. 50172.

Court of Appeals of Oklahoma, Division 2.

Aug. 1, 1978.

Rehearing Denied Oct. 30, 1978.

Certiorari Denied Jan. 15, 1979.

Released for Publication by Order of Court of Appeals Jan. 18, 1979.

## I

On February 24, 1973 defendant agreed with plaintiff that for $14,000 he would furnish the necessary labor and material for building a room onto plaintiff's home. When finished the new room featured, among other things, a leaky roof resulting from shoddy construction, some incredibly poor quality plumbing, and other shortcomings, which to correct, plaintiff had to eventually spend a lot of time and around $1,232.

In his first amended petition plaintiff pleaded the contract and its breach causing $3,060.26 damages in what he denominated a "first cause of action." In a "second cause of action" he alleged that defendant fraudulently obtained final payment of the contract price in the amount of $4,960.46 by falsely representing that the plumbing had passed a final city inspection—an orally agreed to condition precedent to the payment. In a "third cause of action" plaintiff sought $15,025.28 in exemplary damages from defendant for the fraud he perpetrated.

The first gross error committed by the trial court was sustaining defendant's "special demurrer" to plaintiff's claim for exemplary damages. It is rudimentary and long standing statutory law that a party has a right to seek exemplary damages "for the breach of an obligation not arising from contract, where the defendant has been guilty of . . . fraud . . . ." 23 O.S.1971 § 9. Here plaintiff pleaded a breach of both a contractual obligation and a noncontractual one—to refrain from obtaining money from plaintiff under false pretenses—which was permissible. *Miller v. Wissert,* 38 Okl. 808, 134 P. 62 (1913). The fact that plaintiff erroneously referred to his request for punitive damages as a third cause of action [1] did not impair his right to recover them in connection with his

Frank M. Hagedorn, Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, for appellee.

Prichard, Norman, Reed & Wohlgemuth, Tulsa, for appellant.

BRIGHTMIRE, Judge.

Action to recover for breach of home construction contract and fraud in obtaining final payment. Trial court required an election of theories and jury returned verdict for plaintiff on the fraud count. Defendant appeals from a judgment on such verdict.

Despite the commission of critical errors against him plaintiff achieved a $4,000 jury verdict. Defendant, Carl McKinney, sought a new trial and when this was denied he appealed.

---

1. Exemplary damages cannot constitute a basis for a cause of action, but are recoverable only as an incident to the recovery of compensatory damages in certain causes of action. *Davidson v. First State Bank & Trust Co. of Yale,* Okl., 559 P.2d 1228 (1977); *Western Union Tel. Co. v. Garrett,* 59 Okl. 50, 158 P. 619 (1916).

cause for fraud and the request should not have been removed from the petition by means of sustaining a "special demurrer."

■ The second obvious error jeopardizing plaintiff's attempt to achieve justice occurred when the trial court, at the close of the evidence, required plaintiff to "elect remedies." No inconsistency of remedies was involved. *Sisler v. Jackson,* Okl., 460 P.2d 903, 909 (1969). Plaintiff sought only one remedy—damages—and he did so under two theories: (1) breach of contract, and (2) tort. He was entitled to have both theories submitted to the jury. *C. I. T. Corp. v. Shogren,* 176 Okl. 388, 55 P.2d 956 (1936). And, as we have already pointed out, the jury should also have been permitted to pass on plaintiff's request for punitive damages in connection with the fraud count. *Garrett v. Myers,* 190 Okl. 273, 123 P.2d 965 (1942).

As it turned out, plaintiff, handicapped as he was by the judicial excision of vitals from his lawsuit, still managed to achieve a verdict for $4,000—a verdict defendant complains of nevertheless.

## II

Defendant argues first of all that the trial court misinstructed the jury regarding the amount of damages recoverable by plaintiff for his fraud claim.

The instruction, number 8, was rather terse, stating simply that plaintiff should be "adequately compensated for actual damages which . . . is the cost of repairing the plumbing and roof, damages to shrubbery, damage to the interior of his home and any damages occasioned by the payment being made prior to the final plumbing inspection, not to exceed $4,960.66."

■ This charge would not have been quite so bad had plaintiff not been required by the "election" to relinquish the breach of contract portion of his lawsuit. When he made the choice he did, he gave up his right to recover the detriment he suffered from the contractual breach as authorized by 23 O.S.1971 § 21 and had to be content with recovering only the detriment caused by the fraud, in other words, the detriment resulting from giving up the $4,000 final payment. And, what was this detriment? It was not the cost of redoing what the contractor failed to properly do under the contract. It was not damage done to the shrubbery by virtue of poor plumbing and inept roof work. All this was detriment arising from defendant's failure to construct the addition in a contractually required workmanlike manner—a cause of action no longer in the lawsuit. Detriment from defendant's tortious acquisition of the $4,000 was: (1) the $4,000 itself; (2) interest on the sum during plaintiff's deprivation of it; and (3) plaintiff's loss of time, inconvenience and expense incurred in recovering it back. 23 O.S.1971 § 61;[2] 23 O.S.1971 § 7;[3] *State ex rel. Southwestern Bell Tel. Co. v. Brown,* Okl., 519 P.2d 491 (1974); *Harris v. Graham,* 124 Okl. 196, 255 P. 710 (1926); *City of Cushing v. High,* 73 Okl. 151, 175 P. 229 (1918).

■ Potential elements of harm produced by fraudulent conduct differ not at all from those indigenous to infractions of noncontractual obligations in general. To qualify as compensable the element must be a natural and probable consequence of the tortious act. *State ex rel. Southwestern Bell Tel. Co. v. Brown, supra.* Many such elements—or types of tort-generated "detriment"—have been judicially recognized through the years in context of a wide range of factual circumstances. For example, injured feelings from insult and humiliation has been held to be compensable detriment. *St. Louis-S. F. R. Co. v. Clark,* 104

---

2. It reads: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not."

3. It provides: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud or malice, interest may be given in the discretion of the jury."

Okl. 24, 229 P. 779 (1924); *St. Louis & S. F. R. Co. v. Yount,* 30 Okl. 371, 120 P. 627 (1911). So has mental suffering and aggravation of physical disease. *Harris v. Graham,* 124 Okl. 196, 225 P. 710 (1926). Also, injury to reputation and credit. *General Motors Acceptance Corp. v. Davis,* 151 Okl. 255, 7 P.2d 157 (1932). And, personal inconvenience, annoyance and discomfort. *Oklahoma City v. Miller,* 179 Okl. 363, 65 P.2d 990 (1937); *City of Cushing v. High, supra; Dalton v. Kansas City, F. S. & M. R. Co.,* 78 Kan. 232, 96 P. 475 (1908).

In the case at bar the fraud perpetrated by defendant was aimed at obtaining $4,000 from plaintiff. His deception was successful and defendant's gain of $4,000 was plaintiff's loss of the same amount—the first obvious consequence of the fraud.[4] This detriment was accompanied by others. For one thing, plaintiff lost the use of the money and for such loss he is entitled to interest during the period of deprivation. In fact, although the jury did not realize it, the statute specifically authorized them to award interest in connection with the fraud. (*See* footnote 3). And, finally, as a natural and probable consequence of defendant's willful tortious act, plaintiff suffered the loss of time and inconvenience incident to filing a lawsuit in order to get the money back.

These circumstances, then, lead inexorably to the conclusion that the damages instruction was indeed erroneous but that the error is one of which defendant will not be heard to complain for at least two reasons: (1) the jury award was less than what it should have been and probably would have been had the trial judge instructed the jury correctly—a deficiency we cannot correct because plaintiff did not file a cross-appeal; and (2) the fundamental errors of the

trial judge were committed at the request of the defendant, and he may not now gain further advantage by using them to upset an inadequate verdict. *Boettler v. Rothmire,* Okl., 442 P.2d 511 (1968).

Frankly, after examining this record and observing the advantages defendant enjoyed in the trial court we find it hard to understand why defendant opted to appeal. As appears from the foregoing, had plaintiff had his full day in court not only would his breach of contract complaint have been decided by the jury but his entitlement to other specific detrimental consequences of the fraud, along with punitive damages, would have been also. It is possible, of course, defendant overlooked the relevant legal fact that a judgment may be saved by the counterassertion of ameliorating errors committed against the successful party which are of such a nature that their emendment will purge the result of reversible error. *Short v. Guy Nall Trucking Co., Inc.,* Okl., 442 P.2d 497 (1968). He may also have forgotten about the long-standing rule that where a plaintiff recovers less than he is entitled to, defendant cannot secure a reversal because of an inappropriate damage instruction. *McCoy v. Wosika,* 75 Okl. 3, 180 P. 967 (1919).

### III

What we have said thus far answers defendant's second proposition—that the amount of damages awarded to plaintiff is not supported by the evidence. It also disposes of his third one—that the instructions and judgment were without legal foundation because plaintiff's fraud theory was no more than an inappropriate means of trying to recover on an unenforceable oral modification of the original written contract. As we explained plaintiff's fraud

---

**4.** Under the circumstances of this case defendant could have pleaded a set-off for so much of the $4,000 he thought due him and a responsive reply to this could have raised issues relating to the detriment plaintiff sustained as a result of defendant's contractual defaults up to a limit of his prayer for $4,960.66—*e. g.,* completion costs including compensation to plaintiff for time spent in handling the matter, etc. *See*

Justice Irwin's rationale in *Higgins v. Butler,* 10 Okl. 345, 62 P. 810, 813 (1900), and the holding in *St. Louis-S. F. Ry. v. Freeman,* 82 Okl. 6, 198 P. 298 (1921) to the effect that detriment resulting from a breach of contract can include loss of time and correctional expenses. Defendant did not, however, plead an offset but defended the second cause of action on the sole ground that he was not guilty of any fraud.

charge is predicated upon a falsehood told by defendant to gain possession of the $4,000. The jury found defendant lied about the city plumbing inspection and so far as proof of detriment is concerned, it is undisputed that plaintiff paid him $4,000 as a result. It matters not what the contract called for because the subject of the cause that went to the jury was not about nonperformance of a contract but of a noncontractual obligation on the part of defendant to tell the truth.

## IV

■ Defendant's final contention is that plaintiff did not offer clear and convincing evidence of defendant's fraud. We think he did. Plaintiff testified that he told defendant he was holding up the final payment because the work had not been completed in a workmanlike manner as agreed and that one of the main problems was the terribly poor plumbing. Defendant said he would take care of the plumbing problem—and it would be inspected by the city plumbing inspector. A short time later defendant called and asked for the money.

"Well, has the city inspected the plumbing yet?," plaintiff asked.

"I'll call them and have them come out," said defendant.

"Fine, when the city inspector inspects it, I'll give you your check, as we agreed," said plaintiff.

The following day defendant called and said, "the city inspector had been out, had inspected the plumbing, and it passed." In reliance upon the truth of this representation, testified plaintiff, he gave defendant a check for $4,000 on July 21, 1973. Later investigation disclosed that the plumbing had never been inspected and still had not been at the time of trial. Defendant confirmed the fact the plumbing was bad and that a city plumbing inspection was never made. He disputed the fact, however, that final payment depended upon such an inspection. According to defendant, he went to plaintiff's home on July 21, 1973 and admittedly "represented to Mr. Barnes that it was all finally inspected . . ." and

did not "tell him that the plumbing had not been inspected . . ." because on that particular day there were "no plumbing problems"—that is, the pipes did not happen to be leaking like they continued to do later.

During later questioning of defendant has deceit became even clearer and more convincing.

"All right. You don't want to get your money tied up in the city inspections?," the examiner suggested to defendant.

"That's the reason the contract was such."

"So you called Mr. Randall out, who is a *final building* inspector for the city?" (emphasis supplied)

"Yes, sir."

"You tell him [plaintiff] it's finally inspected?"

"Yes, sir . . .," said defendant and thereupon received a check for $4,000 from plaintiff.

Thus, it is obvious that the evidence is more than sufficient to sustain the allegations under any criteria one might wish to apply. Not only does it persuade us that defendant used deception to obtain $4,000 from plaintiff but it convinced the jury. The evidentiary quality of clarity certainly does not impose upon a plaintiff the burden of adducing undisputed evidence of fraud, although in this case he nearly did. *Williams v. Wilson,* 143 Okl. 66, 287 P. 716 (1930).

Affirmed.

NEPTUNE, P. J., and BACON, J., concur.