**F I L E D**
United States Court of Appeals
Tenth Circuit

MAY 19 1998

**PATRICK FISHER**
Clerk

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

OKLAND OIL COMPANY,

       Plaintiff - Appellee,
Cross-Appellant,

    v.

CONOCO INC., a Delaware
corporation,

       Defendant - Appellant,
Cross-Appellee.

Nos. 97-6004 & 97-6102

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. CIV-96-83-M)**

---

Gary W. Davis (L. Mark Walker with him on the briefs), Crowe & Dunlevy, Oklahoma City, Oklahoma, for Appellant-Cross-Appellee.

Robert N. Barnes (Michael E. Smith and Patranell Britten Lewis with him on the briefs), Barnes, Smith & Lewis, P.C., Oklahoma City, Oklahoma, for Appellee-Cross-Appellant.

---

Before **ANDERSON**, **LOGAN**, and **MURPHY**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

Okland Oil Company brought this diversity action against Conoco, Incorporated, alleging breach of contract, fraud in the inducement, deceit by false representation, and deceit by nondisclosure or concealment with respect to Conoco's failure to pay Okland the full amounts owing under a series of gas production contracts entered into between 1980 and 1987. Okland contended that from 1985, when the price of gas was deregulated, to 1992, Conoco secretly and improperly made certain deductions before calculating the amount due Okland under the contracts. Conoco denied these allegations, contending, among other things, that the deductions, amounting to ten cents per MMBTU of gas, were for production-related costs ("PRC's") which the contracts authorized Conoco to deduct. On a separate issue, Conoco conceded liability for failing to reimburse Okland under some of the contracts for state production taxes, but it raised the statute of limitations as a defense to most of that liability.

After a one-week jury trial, the jury found Conoco liable on every claim asserted by Okland and awarded Okland $1,559,633.12 in actual damages and $3,000,000 in punitive damages. After denying Conoco's renewed motion for judgment as a matter of law, the district court entered judgment in favor of Okland for the amount of damages awarded by the jury and awarded Okland its costs in prosecuting the action. On appeal, Conoco does not contest the

sufficiency of the evidence to support the breach of contract verdict but challenges the sufficiency of the evidence to support the tort verdicts and attacks the damage awards, especially the punitive damage award. On these and other points, Conoco raises numerous issues, which may be summarized as follows: (1) the district court erred in submitting punitive damages to the jury; (2) Okland's tort claims cannot support the entire actual damage award, which then cannot support the entire punitive damage award, which exceeded the limits defined by Oklahoma law; (3) the verdicts on the fraud and deceit claims were unsupported by the evidence; (4) the punitive damage instructions and verdict form were inadequate; (5) the district court erred in permitting Okland to introduce certain damage exhibits at trial; (6) the court erred in permitting Okland to argue that Conoco's refusal to admit fraud was a basis for awarding punitive damages; (7) the court erred by improperly instructing the jury on fraud; (8) the court erred in refusing to instruct the jury regarding Federal Energy Regulatory Commission ("FERC") Order 94; and (9) the court erred in allowing Okland's expert to testify as to Conoco's intent. Conoco contends that a new trial should be granted and/or that the punitive damage award should be reversed outright.

Okland, in a separate appeal, challenges the district court's denial of its request for recovery of certain costs in prosecuting the action. We address the appeals together for convenience and affirm.

## BACKGROUND

During the period in question, Okland operated numerous wells that produced gas, which it sold to Conoco. Conoco bought, transported, processed, and resold the gas to Resale or "Tailgate" Purchasers. See Appellee's Supplemental App. at 75-76. Under its contracts with Conoco, Okland received a percentage (typically in the range of 84% to 90%) of the price Conoco was paid by the Tailgate Purchasers.

Until 1985, the price of gas was regulated under the Natural Gas Policy Act through FERC. In January 1985 the price was deregulated, allowing Conoco to charge more to its Tailgate Purchasers. In April 1985, Conoco began deducting ten cents per MMBTU of gas from the price it received from its Tailgate Purchasers before calculating and remitting to Okland the percentage it was due under the contracts. The deductions allegedly represented PRC's.

At trial, Okland contended that Conoco was not permitted under the terms of the gas purchase contracts between them to deduct PRC's from the resale price before calculating the percentage due to Okland, and that it did so secretly and deceitfully, by not accounting for the deductions and by representing the adjusted resale price as the gross resale price. Okland argued that it relied on Conoco's monthly statements, which listed "0.00" in the column marked "deductions," oral conversations between Conoco and Okland representatives, and letters to Okland

-4-

explaining the price calculations, none of which disclosed the deductions or intimated that Okland was receiving less than the agreed upon percentage of the full resale price as required under the contracts. Neither did Conoco tell Okland of the deductions during the amendment of some of the contracts after April 1985.

Conoco, on the other hand, argued that the contracts contained clear language giving Conoco the right to deduct the ten cents from the amount it received from the Tailgate Purchasers. The provision upon which Conoco relied is as follows:

> If Congress, the Federal Energy Regulatory Commission . . . or successor governmental authority having jurisdiction shall cease to regulate the price for gas sold and delivered hereunder, [Okland] shall receive [a percentage] of the price per MMBTU received by [Conoco] for the subsequent sale of the gas *exclusive of any production-related costs that [Conoco] has been authorized to receive.*

Appellant's App. Vol. I at 270 (emphasis added).

Conoco claimed that FERC Order 94, under which certain PRC's could be added to the maximum legal price charged to Tailgate Purchasers during regulation, authorized it to exclude the ten cents as PRC's, even though Conoco was never actually paid separately for any PRC's by its Tailgate Purchasers. Okland countered by submitting evidence that in any case Conoco never qualified under Order 94 to deduct PRC's, even during regulation.

On a separate issue, tax reimbursements, Conoco admitted it had mistakenly failed to reimburse Okland for production taxes, but argued that the statute of limitations prevented Okland's recovery of all but a small amount of those taxes.

Okland quantified its actual damages by listing the amount it was underpaid on each contract. The total revenue loss, plus interest and litigation costs, amounted to $1,559,633.12.[1] The jury was asked to sort through the tangle of conflicting liability claims and damage amounts and rendered its verdict on a form which first required the jury to mark, claim by claim, involving both tort and contract, whether it believed Conoco was liable. It found for Okland on all of the claims. The form then asked the jury to provide a single actual damage award if it had found Conoco liable on one or more of the claims, inclusive of both tort and contract.[2] The jury responded with an award of $1,559,633.12 actual

---

[1]Specifically, the breakdown of the actual damage award—as presented to the jury by Okland and as alleged by Conoco to be the amount the jury found—is as follows:

| PRC Claim | $ 508,134.22 |
| PRC Interest | $ 759,679.00 |
| Tax Claim | $ 98,361.66 |
| Tax Interest | $ 140,787.48 |
| Litigation Costs | $ 52,670.75 |
| Total | $1,559,633.12 |

See Appellant's App. Vol. I at 373-74, Vol. II at 660-61.

[2]The verdict form provided as follows:

V E R D I C T

(continued...)

[2](...continued)

ANSWER PART A:

A.    We, the jury, find as follows on the claims of Okland Oil Company:

| | CLAIM | CONOCO INC. | |
|---|---|---|---|
| 1. | Breach of contract (P.R.C. exclusion) | ____ not liable | __X__ liable |
| 2. | Breach of contract (tax reimbursement) | ____ not liable | __X__ liable |
| 3. | Deceit (false representation) | ____ not liable | __X__ liable |
| 4. | Deceit (nondisclosure or concealment) | ____ not liable | __X__ liable |
| 5. | Fraud in the inducement | ____ not liable | __X__ liable |

ANSWER PART B only if you have found Conoco Inc. liable on one or more claims of Okland Oil Company:

B.    We, the jury, having found in favor of the Okland Oil Company and against Conoco Inc. on one or more of the plaintiff's claims, award Okland Oil Company actual damages in the amount of $___1,559,633.12___.

ANSWER PART C only if you have found Conoco Inc. liable on the plaintiff's claim for deceit (false representation), deceit (nondisclosure or concealment), and/or fraud in the inducement and awarded actual damages:

C.    We, the jury, do __X__ do not ____ find by clear and convincing evidence that Conoco Inc. acted in reckless disregard of the rights of others including Okland.

ANSWER PART D only if you have found Conoco Inc. liable on the plaintiff's claim for deceit (false representation), deceit (nondisclosure or concealment), and/or fraud in the

(continued...)

-7-

damages, and an additional $3,000,000 in the second stage for punitive damages.

## DISCUSSION

### I.      Punitive Damages

Conoco attacks the punitive damage award on numerous grounds.  While the analysis of Conoco's contentions is intertwined, we address the issues separately, some in this section and others elsewhere in the opinion, as Conoco has argued them.

#### A.      Breach of Contract

Conoco argues that the district court should not have allowed the jury to consider punitive damages because the action was solely for breach of contract, and punitive damages do not apply in such actions.[3]  Conoco adequately preserved

---

[2](...continued)
inducement and awarded actual damages:

> D.      We, the jury, do __X__ do not ____ find by clear and
>          convincing evidence that Conoco Inc. acted intentionally and
>          with malice towards others including Okland.

Appellant's App. Vol. I at 184-85.

[3]Remarkably and inconsistently, in a related appeal regarding the award of attorneys fees to Okland, Conoco argued before the district court that:

> "[T]he majority of [Okland's] fees were incurred pursuing and proving its
>                                                                              (continued...)

this issue for appeal,[4] Appellant's App. Vol. III at 1139-41, Vol. IV at 1550-51, and we review it de novo. City of Wichita v. United States Gypsum Co., 72 F.3d 1491, 1494-95 (10th Cir. 1996).

---

[3](...continued)
fraud claims while only modest amount of fees were incurred pursuing and proving its breach of contract claims. The evidence supports this contention. The majority of [Okland's] discovery requests, including [Okland's] deposition questions, the evidence [Okland] presented at trial and the questions [Okland] asked witnesses at trial focused on fraud. The breach of contract claims were merely incidental."

Okland Oil Co. v. Conoco Inc., No. CIV-96-0083-M (W.D. Okla. filed Sept. 29, 1997), slip op. at 3 n.5 (quoting Conoco's Resp. Br. at 10).

[4]At trial, Conoco failed adequately to raise many of the issues it now asks us to review. We have consistently rejected the argument that raising a related theory below is sufficient to preserve an issue for appeal. See Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 721-22 (10th Cir. 1993). Changing to a new theory on appeal that "falls under the same general category as an argument presented at trial" or discussing a theory only in a vague and ambiguous way below is not adequate to preserve issues for appeal. Id. at 722. Indeed, the Court of Appeals is not a "second shot forum . . . where secondary, back-up theories may be mounted for the first time." Tele-Communications, Inc. v. Commissioner of Internal Revenue, 104 F.3d 1229, 1233 (10th Cir. 1997) (quotation omitted).

Therefore, because we are concerned about, inter alia, finality of litigation and judicial economy, we review such novel issues only for plain error, and under that standard we only grant relief in exceptional circumstances or to prevent manifest injustice. Smith v. Northwest Fin. Acceptance, Inc., 129 F.3d 1408, 1416 (10th Cir. 1997); Lyons, 994 F.2d at 721-22; see also Shugart v. Central Rural Elec. Co-op., 110 F.3d 1501, 1507 (10th Cir. 1997); Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186, 1190 (10th Cir. 1997); Moe v. Avions Marcel Dassault-Breguet Aviation, 727 F.2d 917, 925 (10th Cir. 1984); Fed. R. Civ. P. 51.

We make this point at the outset to avoid repetition as we address the issues, stressing, as well, that in some instances our resolution of the issue would be the same regardless of the standard of review employed.

The jury found Conoco separately liable for the torts of fraud and deceit, both of which may support an award of punitive damages under Oklahoma law. See Zenith Drilling Corp. v. Internorth, Inc., 869 F.2d 560, 565 (10th Cir. 1989); Burk v. K-Mart Corp., 770 P.2d 24, 28 & n.10 (Okla. 1989); Okla. Stat. tit. 23, § 9.1(A). This is true even where breach of contract is also alleged and where the "parties' relationship basically is contractual, if the breaching party's acts constitute 'an independent, willful tort.'" Zenith, 869 F.2d at 565 (quoting Z.D. Howard Co. v. Cartwright, 537 P.2d 345, 347 (Okla. 1975)); Burk, 770 P.2d at 28 & n.10; see also Woods Petroleum v. Delhi Gas Pipeline, 700 P.2d 1023, 1027 (Okla. Ct. App. 1983) (allowing punitive damages in a breach of contract action where defendant also breached a common law duty to "perform the thing to be done with care, skill, reasonable expediency and faithfulness"); Christian v. American Home Assur. Co., 577 P.2d 899, 904-05 (Okla. 1977) (stating duty to act in a manner that neither fraudulently induces a party to enter into a contract, nor deceives another); Burton v. Juzwik, 524 P.2d 16, 19 (Okla. 1974) ("Punitive damages were allowed because defendant breached [its] common law duty . . . and part of plaintiff['s] actual damages resulted from [that breach]."); Barnes v. McKinney, 589 P.2d 698, 702-03 (Okla. Ct. App. 1978) (stating punitive damages should have been allowed where fraud and breach of contract were alleged because the punitive damages were based on the "noncontractual obligation on the

part of defendant to tell the truth"). Fraud is an independent, willful tort under Oklahoma law. FDIC v. Hamilton, 122 F.3d 854, 857 (10th Cir. 1997); FDIC v. Hamilton, 58 F.3d 1523, 1530 (10th Cir. 1995). While it is true that "[t]he Oklahoma Supreme Court has cautioned against allowing punitive damages in a suit for breach of contract when the plaintiff has alleged fraud or malice merely to support a claim for punitives," Zenith, 869 F.2d at 565 (citing Burton, 524 P.2d at 19-20), this is not such a case. Thus, under Oklahoma law, the submission of punitive damages to the jury was appropriate since, as indicated above, the jury found Conoco liable for torts and not solely for breach of contract.

## B. Ambiguous Contract

Conoco next argues that punitive damages are not appropriate when the underlying dispute rests on ambiguous language in a contract. Conoco properly preserved this issue for review,[5] and we review it de novo. City of Wichita, 72 F.3d at 1494-95. Conoco admits no Oklahoma case law directly supports its

---

[5]Conoco moved at the close of Okland's case for judgment as a matter of law as to punitive damages, arguing that the contracts were subject to multiple interpretations. Appellant's App. Vol. III at 1139-1141. Conoco renewed that motion, moved for judgment notwithstanding the verdict, and objected to the court's submission of punitive damages to the jury after the phase I verdict was entered but before the jury considered punitive damages. Appellant's App. Vol. IV at 1519.

assertion, but looks to other jurisdictions for persuasive authority.[6]  Appellant's

Br. at 11-12.  We need not exhaustively consider the authorities because the

argument lacks merit on its face.

As discussed above, the jury explicitly found that Conoco separately

committed the tortious acts of fraud and deceit,[7] and punitive damages may be

awarded in tort actions, even when the original relationship between the parties

arises out of a contract.  Zenith, 869 F.2d at 565.  The jury found Conoco liable in

tort, and the ambiguity of the contract is, therefore, irrelevant.


**C.    Sufficiency of the Evidence to Support the Liability Verdict for
        Fraud and Deceit**

Conoco also challenges the sufficiency of the evidence to support the jury's

finding of liability on the fraud and deceit claims.  Review of the adequacy of the

jury's verdict "is limited to determining whether the record—viewed in the light

most favorable to the prevailing party—contains substantial evidence to support

the jury's decision."  Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co.,

---

[6]Among other cases, Conoco cites an unpublished case from a panel of the
Wisconsin Court of Appeals in the early 1980's.  See Appellant's Br. at 12 & Tab C.  We
do not find these cases persuasive.

[7]To the extent that Conoco's argument here attacks the sufficiency of the evidence
underlying the jury's findings of fraud and deceit, see Appellant's Br. at 13-18, we reject
it as discussed in Section I.C, infra.

104 F.3d 1205, 1212 (10th Cir. 1997) (quotations omitted); see also Rainbow Travel Serv., Inc. v. Hilton Hotels Corp., 896 F.2d 1233, 1239 (10th Cir. 1990).

After reviewing the record, we conclude that when viewed in the light most favorable to Okland, the record contains substantial evidence upon which a reasonable jury could have found Conoco liable in tort. Okland introduced evidence at trial showing that the monthly statements sent to Okland by Conoco indicated no deduction for PRC's. Appellant's App. Vol. I at 191-199, Vol. III at 722-29. These statements had been changed from an earlier format, allegedly to hide the new PRC exclusions. Id. Vol. III at 722-29. David Nicks, a Conoco representative, admitted that the statements did not reflect the PRC deduction or the failure to pay the tax reimbursement. Id. Vol. IV at 1446-47.

The jury also viewed letters sent by Conoco indicating the price to be paid to Okland, but not disclosing the PRC deductions. See, e.g., Appellee's Supplemental App. at 77-83. These documents implied that Okland would receive a percentage of the full resale price when in reality, Conoco only gave Okland a percentage of the resale price minus ten cents. Id. Richard Metz, an expert witness for Okland, testified that a Conoco interoffice memorandum, which indicated the PRC deduction was to be taken, along with other documents, showed the PRC deduction was profit and not a reimbursement for Conoco. Id. at 87; Appellant's App. Vol. III at 1029-31. Okland also presented evidence that

Conoco's representative fraudulently induced Okland to enter into the contracts by concealing the fact that PRC's had been and would in the future be deducted from the resale price. Id. Vol. III at 713-21. Conoco also admitted deducting PRC's on a contract that did not permit such deductions. Id. Vol. IV at 1263, Vol. III at 1031-32.

Furthermore, even though Conoco argued that FERC Order 94 formed the basis of authorization under the contracts to exclude PRC's from the price Conoco paid to Okland, id. Vol. IV at 1156-57, 1238-39, Okland presented testimony, including the deposition testimony of a Conoco representative, that the order could not have authorized such an exclusion. Id. Vol. III at 980-81, 989-90; Appellee's Supplemental App. at 170-71. In fact, Okland's evidence showed that Conoco may not have complied with the requirements of FERC Order 94, which compliance was a prerequisite to any FERC authorization of a PRC. See, e.g., Appellant's App. Vol. III at 924-35, 982-84, 1037-38, Vol. IV at 1237-45.

Okland's evidence also tended to show that the Tailgate Purchasers had not authorized the PRC exclusions, even though Conoco had included some self-serving language in a few of those contracts, possibly in an attempt to use such an authorization as a defense in any subsequent litigation. See id. Vol. III at 1018-21, Vol. IV at 1246-50; Appellee's Supplemental App. at 108-09, 223-26. The jury, assessing the credibility of the witnesses, was entitled to draw

-14-

inferences from all this evidence that Conoco's conduct constituted fraud and deceit. The fact that Conoco presented contrary evidence at trial, and urgently reargues the evidence on appeal, cannot overcome the proposition that the jury is the sole trier of the facts, and we cannot disturb their prerogative when there is evidence to support the verdict. There is here.

Because the jury's verdict as to the tort claims was based on substantial evidence, and punitive damages are allowable in tort actions, the district court's submission to the jury of punitive damages based on Okland's tort claims was not error.

### D. Presentation of Tort Damages

Next, Conoco contends that Okland submitted evidence only of contract damages and that it did not present evidence of actual damages resulting from Conoco's tortious actions. Therefore, argues Conoco, the jury could not have awarded tort damages, leaving no basis for the award of punitive damages. Although Conoco objected generally to the submission of punitive damages, it did not make this argument to the district court. Our review is for plain error only.

Okland presented evidence of actual damages by listing the damages incurred under each of the contracts. See Appellant's App. Vol. I at 370-74, Vol. II at 390, 660-61. Conoco contends that this categorization of the damages shows

that only damages for breach of contract were awarded. While Okland did not specifically allocate portions of its actual damage claim to tort and to breach of contract, it did separate out those damages that were recoverable from 1985 to 1990 and those that were recoverable beginning in December 1990.[8] Appellee's Supplemental App. at 104-06. The former damages were recoverable only under a tort theory because the Oklahoma statute of limitations for recovery of a breach of contract is five years. Okla. Stat. tit. 12, § 95, tit. 12A, § 2-725. Actions for fraud, on the other hand, may be brought within two years after the discovery of the fraud. Id. The court's instructions informed the jury of these statutes. Appellant's App. Vol. I at 172-75. Thus, the jury *could not* have awarded the amount it did under a pure breach of contract theory, but it could have and did on the tort theories.[9]

The fact that Okland organized its damages by contract does not mean that the jury was prevented from looking to them as a measure for awarding damages in tort. In John A. Henry & Co. v. T.G. & Y. Stores Co., 941 F.2d 1068, 1072

_____

[8]Okland filed its Petition on December 22, 1995. The statute of limitations for breach of contract would exclude recovery for damages occurring prior to December 22, 1990.

[9]We consider Conoco's related argument that the jury instructions and verdict form did not tell the jury to allocate the actual damage award between breach of contract and tort causes of action in Section I.E, infra. We need not determine here the exact amount of actual damages awarded on the contract and tort theories because the punitive damage award can, in any event, be supported by a much smaller amount of tort damages than the entire $1.5 million actual damage award as discussed in Section II, infra.

-16-

(10th Cir. 1991), we rejected a similar argument because the characterization of the damages was "properly offered as proof of damages for *both* claims." Id. (emphasis added).

The measure of damages for tort "is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not." Okla. Stat. tit. 23, § 61; see also Okla. Stat. tit. 76, § 2. "Detriment" is defined in Okla. Stat. tit. 23, § 4, as "a loss or harm suffered in person or property." Specifically, "Oklahoma allows one who is fraudulently induced to enter a contract to recover up to the amount fraudulently misrepresented." LeFlore v. Reflections of Tulsa, Inc., 708 P.2d 1068, 1077 (Okla. 1985). This calculation is "the difference between the actual value received and the value the defrauded party would have had if it had been as represented." Id.; see also Woods Petroleum Corp. v. Delhi Gas Pipeline Corp., 700 P.2d 1023, 1026-27 (Okla. Ct. App. 1983); Barnes v. McKinney, 589 P.2d 698, 701-02 (Okla. Ct. App. 1978). In addition, the jury may award prejudgment interest on top of the principal amount in order to compensate for the detriment caused by the deprivation of the money. See Okla. Stat. tit. 23, §§ 5-7, 61, tit. 52, § 570.10; Sisney v. Smalley, 690 P.2d 1048, 1050-51 (Okla. 1984); Barnes, 589 P.2d at 701; see also Investors Preferred Life Ins. Co. v. Abraham, 375 F.2d 291, 295-96 (10th Cir. 1967). See generally U.S. Industries, Inc. v. Touche Ross & Co., 854 F.2d

-17-

1223, 1256-58 (10th Cir. 1988) ("Under federal law, the rationale underlying an award of prejudgment interest is to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of judgment."), implied overruling on other grounds recognized by, Anixter v. Home-Stake Prod. Co., 77 F.3d 1215, 1231 (10th Cir. 1996).

Here, the fraudulent misrepresentation concerned the PRC exclusion under the contract. We see no reason why the fraudulent inducement and deceit damages presented by Okland cannot be calculated based on the amount Conoco fraudulently misrepresented that Okland would receive under the contract, *i.e.,* the resale price with no PRC exclusion, plus the detriment suffered by Okland from loss of use of the money.

Furthermore, as stated above, a portion of the damages here was recoverable only in an action for tort, and Okland presented those damages to the jury. The jury found Conoco liable for tort and awarded damages therefor.

Finally, in Instruction No. 11, Appellant's App. Vol. I at 147, the jury was instructed that its award for breach of contract and fraud or deceit could not amount to a double recovery; so its damage award was necessarily tied to the loss Okland suffered under its contracts by virtue of Conoco's underpayment. The jury appropriately awarded actual damages that totaled only the actual damages Okland suffered under all theories of liability. Because the jury awarded actual

damages for tort, it was not error for the district court to allow the jury to consider punitive damages.

**E.      Adequacy of the Punitive Damages Instructions and the Verdict Form**

Related to Conoco's argument that Okland failed to present evidence of actual tort damages, is its contention that reversal is required because the jury instructions were deficient in failing to tell the jury to award punitive damages only if it found tort damages and because the general verdict form given to the jury did not permit a determination of how much of the actual damages were for tort and how much were for breach of contract.

**1.      Instructions Regarding Punitive Damages**

Conoco alleges that the court's punitive damages instructions were deficient because they failed to accurately inform the jury that it must award actual damages *for tort* before awarding punitive damages.  Instruction No. 39, to which Conoco objects, was given to the jury in the first stage of trial and provided that the jury could award punitive damages in a later stage of trial only "[i]f you find in Okland's favor on either of its claims of deceit and/or on its claim of fraud in the inducement and award Okland actual damages."  Appellant's App. Vol. I at 177.  On appeal, Conoco attacks this first stage instruction by

-19-

arguing that the court should have given an instruction Conoco requested in the

*second* stage of trial, which would have accurately told the jury that it must award

tort damages before awarding punitive damages.  We do not find in the record nor

does Conoco tell us that it objected to the first or second stage punitive damages

instructions on the ground that the language it requested in its proposed

instruction was absent.  In fact, only in Okland's Supplemental Appendix do we

find Conoco's proposed first stage instruction as to punitive damages.  See

Appellee's Supplemental App. at 8.  That proposed instruction, which states that

the jury can only award punitive damages later "[i]f you find in favor of plaintiff,

and grant it actual damages," id., propagates the same "error" Conoco now alleges

the court's instruction contained.  Having failed to adequately raise this issue

below, we review it for plain error.

We initially question whether, in any event, Conoco's proposed second

stage instruction would have been enough to cure the error Conoco is alleging.

The instruction was to be given only after the jury had already completed the first

stage of trial, where the jury either did or did not award actual damages for tort.

Moreover, Conoco's proposed second stage instruction did not accurately

state the law.  The proposed instruction provided as follows:

> Ladies and Gentlemen of the jury, you have found in favor of
> the plaintiff and granted him/her actual damages for fraud, and you
> have also found by a separate verdict that the defendant was guilty of
> reckless disregard of the rights of others.

You may now, in addition to actual damages, grant the plaintiff punitive damages in such sum as you reasonably believe will punish defendant and be an example to others.

. . . .

In no event should the punitive damages exceed the greater of: $100,000 or the amount of actual damages you have previously awarded.

Proposed Instruction No. 30, Appellant's App. Vol. I at 15-16. Unfortunately for Conoco, the jury in the first stage of trial found not only that Conoco had acted recklessly, but also that it had acted intentionally and with malice. Appellant's App. Vol. I at 185. Giving Conoco's proposed instruction on recklessness would have been error because Conoco's conduct fit into the "intentional and malicious" category of Oklahoma's punitive damages statute, not the recklessness category. See Okla. Stat. tit. 23, § 9.1(B), (C). Conoco does not tell us here whether it requested an instruction within the correct category, and not finding one in the Appellant's Appendix, we assume it did not. The court therefore properly refused to give Conoco's tendered instruction.

In addition, looking at the instructions as a whole, we find that they properly informed the jury of its responsibility to find tort damages prior to awarding punitive damages. Each of the instructions on the three tort theories clearly advised the jury that to find Conoco liable on those claims, it must find as

one element that Okland had suffered damages as a result of Conoco's actions.[10] Appellant's App. Vol. I at 160, 162, 166. We are to presume that the jury followed those instructions, Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1456 (10th Cir. 1997); United States v. Cooley, 1 F.3d 985, 997 (10th Cir. 1993), and found damages.

Taken as a whole, the instructions, including the second stage instruction and the verdict form, which contained the same type of language as the first stage instruction, see Appellant's App. Vol. I at 182, 184-85, properly informed the jury that it must award actual damages on at least one tort theory before awarding punitive damages.

### 2.    The Verdict Form

Conoco also challenges the verdict form given by the court because it does not sufficiently inform the jury that it must have awarded actual tort damages prior to turning to punitive damages and because it does not ask the jury to allocate damages between tort and contract. Although Conoco requested its own verdict form, that form did not do either of these things. See Appellee's

---

[10]Conoco's Brief also refers us, without argument, to pages 17-20 of its appendix, where it requested special interrogatories to be given to the jury. Appellant's Br. at 21. The interrogatories essentially ask the jury to indicate that it found each element of fraud, including that Okland suffered injury. For the same reasons discussed above, the district court's refusal of these interrogatories was not error.

Supplemental App. at 1-6.  Failure to request the verdict form it now seeks limits our review to plain error.  Kloepfer v. Honda Motor Co., 898 F.2d 1452, 1456 (10th Cir. 1990).[11]

The verdict form[12] instructed the jury to answer Parts C and D, which ask the jury to determine the recklessness or maliciousness of Conoco's actions, *only* if "you have found Conoco Inc. liable on the plaintiff's claim for deceit (false representation), deceit (nondisclosure or concealment), and/or fraud in the inducement *and awarded actual damages*."  Appellant's App. Vol. I at 184-85 (emphasis added).  Conoco did not object to this language at trial and the language it proffered was even less specific.[13]  The verdict form tracks the language of the jury instructions and is sufficient to inform the jury of its responsibility.

The verdict form also provided only one space for the jury to award actual damages, which Conoco now argues creates ambiguity as to the nature of those damages.  In Mason, 115 F.3d at 1458, we held that where the jury instructions

---

[11]In addition, even if Conoco's proposed verdict form had contained the language it now requests, it still should have objected to the form given by the district court *for the reasons it now asserts.*  See United States v. Voss, 82 F.3d 1521, 1530-31 (10th Cir.), cert. denied, 117 S. Ct. 226 (1996).

[12]The entire verdict form is reproduced at note 2, supra.

[13]Conoco's proposed verdict form asks the jury to proceed to its reckless disregard and intentional/malice determinations "only if you found in favor of the Plaintiff on its claim for fraud or its claim of conversion."  Appellee's Supplemental App. at 2.

explained the nature and availability of both pecuniary and non-pecuniary compensation, a verdict form requesting only one compensatory damages sum was not error. As discussed above, the instructions given were adequate to inform the jury of its responsibilities here.

In addition, Conoco itself opted to request only one space for actual damages and opted *not* to ask the jury to divide damages between tort and contract on its proposed form, see Appellee's Supplemental App. at 2, possibly because it decided that giving the jury more than one blank to fill in might encourage a higher actual damage award. Conoco also did not object to the verdict form on this basis immediately after it was rendered, nor did it seek a clarification of the allegedly ambiguous verdict before the jury was dismissed. "A party who fails to bring to the trial court's attention [such] ambiguities . . . may not seek to take advantage of such ambiguities on appeal." Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1468 (10th Cir. 1992); see Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186, 1193 (10th Cir. 1997) (holding failure to request clarification of ambiguous verdict before the jury is discharged limits review to plain error). Having chosen the path it did and in light of our

conclusion above that the jury awarded actual damages for tort,[14] we do not find

plain error in the form of the verdict.

### F.    Punitive Damages as an Impermissible Double Penalty

 Okla. Stat. tit. 52, § 570.10(D)(1) (1998 Supp.),[15] provides that:

> Except as otherwise provided in paragraph 2 of this subsection, where proceeds from the sale of oil or gas production or some portion of such proceeds are not paid prior to the end of the applicable time periods provided in this section, that portion not timely paid shall earn interest at the rate of twelve percent (12%) per annum to be compounded annually, calculated from the end of the month in which such production is sold until the day paid.

Okland invoked this statute and added a 12% interest figure to the underpayment

amount it claimed for each contract.[16]  Conoco now contends for the first time

that this award of statutory prejudgment interest constitutes a penalty, and,

accordingly, that an award of punitive damages on top of this statutory interest

---

[14]Although we have reversed and remanded cases where we were uncertain if the jury based its verdict on an improper theory, see, e.g., Brown v. Wal-Mart Stores, Inc., 11 F.3d 1559, 1566-67 (10th Cir. 1993), we need not do so here because the same uncertainty is not present.  See generally Anixter v. Home-Stake Prod. Co., 77 F.3d 1215, 1229 (10th Cir. 1996).

[15]The predecessor statute, Okla. Stat. tit. 52, § 540 (1991), contained essentially the same language.

[16]See supra note 1, for Conoco's theory of how the actual damage award was itemized by the jury.

constitutes an impermissible double penalty under Oklahoma law.[17]  We are

unpersuaded for three reasons.

First, we are unpersuaded that the 12% interest provided under Okla. Stat.

tit. 52, § 570.10(D)(1) constitutes a penalty in the sense asserted by Conoco—that

it cannot coexist under Oklahoma law with a separate award of punitive damages.

Although the Oklahoma courts have not squarely addressed whether the

combination of punitive damages and § 570.10 prejudgment interest is

permissible, an examination of Oklahoma law convinces us that it is.  "[T]he

common law remains in full force in [Oklahoma], unless a statute explicitly

provides to the contrary."  Tate v. Browning-Ferris, Inc., 833 P.2d 1218, 1225

(Okla. 1992).  Here the relevant statute does not exclude punitive damages.  In

fact, Okla. Stat. tit. 52, § 570.14(B) makes it clear that § 570.10 "shall neither

preclude nor impair the right of any owner to obtain through the district courts

remedies available under existing law or additional remedies herein granted."

Furthermore, a comparison of § 570.10 and Oklahoma's punitive damage

statute, Okla. Stat. tit. 23, § 9.1 (1998 Supp.), shows that different elements

separate these awards.  Exemplary damages may be awarded under § 9.1 only if

the jury finds by clear and convincing evidence that the defendant has acted with

---

[17]This theory was not raised below.  As indicated above, we review the issue only
for plain error.

reckless disregard for the rights of others or has acted intentionally and with malice toward others. Id. § 9.1(B), (C). Prejudgment interest under § 570.10, on the other hand, may be awarded to a plaintiff even without a showing of recklessness, intent, or malice.

The 12% prejudgment interest acts to compel compliance with the statute's requirement that proceeds be paid to those entitled thereto. See McClain v. Ricks Exploration Co., 894 P.2d 422, 431-32 (Okla. Ct. App. 1994). Punitive damages, on the other hand, are intended to provide a "'punishment for the benefit of society as a restraint upon the transgressor, and a warning and example serving as a deterrent to commission of like offenses in the future.'" Maxwell v. Samson Resources Co., 848 P.2d 1166, 1172 (Okla. 1993) (quoting Oller v. Hicks, 441 P.2d 356, 360 (Okla. 1967)). Therefore, "'[w]hen a defendant's conduct is such as to amount to fraud, oppression or malice, or the act is wilfully and wantonly done with criminal indifference to the plaintiff's rights, exemplary damages are allowable.'" Id.

Consistent with this reasoning, the Oklahoma Supreme Court in an analogous setting has required the addition of prejudgment interest under Okla. Stat. tit. 12, § 727 even when punitive damages were also awarded. See, e.g., Timmons v. Royal Globe Ins. Co., 713 P.2d 589, 593-94 & n.14 (Okla. 1985). See generally Paper Converting Mach. Co. v. Magna-Graphics Corp., 745 F.2d

11, 23 (Fed. Cir. 1984) ("[The purpose of prejudgment interest] is to compensate for the delay a patentee experiences in obtaining money he would have received sooner if no infringement had occurred . . . . On the other hand, damages are trebled as punishment. There is no conflict in the award of both."). And, in Wagoner v. Bennett, 814 P.2d 476 (Okla. 1991), the Oklahoma Supreme Court held that a tenant could pursue a common law action for conversion of property in addition to the statutory remedy for wrongful eviction because the elements of the two causes of action are different. Id. at 481. Accordingly, the Court held that punitive damages could be awarded on the conversion claim. Id.

The cases cited by Conoco in support of its argument are distinguishable. Thus, for example, Maxwell, 848 P.2d at 1172-73, and Culbertson v. McCann, 664 P.2d 388, 393-94 & n.31 (Okla. 1983), are cases involving other Oklahoma statutes, and stand only for the proposition that where wrongful *intent* is proven and *damages* are doubled or trebled, the addition of punitive damages is inappropriate because both constitute exemplary damages. See Maxwell, 848 P.2d at 1173. Here, a showing of intent is not necessary for awarding the § 570.10 interest, and the damages were not double or trebled before the award of punitive damages.

Cases such as Fleet v. Sanguine, Ltd., 854 P.2d 892, 897-98, 899-900 (Okla. 1993), and McClain, 894 P.2d at 431-32, cited by Conoco because they

-28-

referred to § 570.10 interest as a penalty, are best understood in their particular settings. They stand only for the general rule that prejudgment interest gives way to a limited exception to ensure a fair result. Cf. City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 195 (1995); General Motors Corp. v. Devex Corp., 461 U.S. 648, 655-57 & 655 n.10 (1983). In Fleet that circumstance was defendant's offer of judgment which "must be treated as implicitly comprising its entire obligation in suit--inclusive of prejudgment interest." 854 P.2d at 900. In McClain the unusual circumstance was plaintiffs' refusal of royalties tendered by defendant. 894 P.2d at 432. In those situations, prejudgment interest could very well have been penal in nature. They do not suggest that willfulness, recklessness, or malice is required to award the statutory interest. The only requirement is that the proceeds were wrongfully withheld. See Fleet, 854 P.2d at 900. Wrongful *intent* is not required.

Second and in any event, as indicated above, the jury's damage award figure was not broken down into its constituent elements on the verdict form, thus it is impossible at the outset to accept Conoco's basic assumption that the statutory 12% interest figure was even awarded. Given the generality of the damages figure on the verdict form, we are unpersuaded that Conoco can demonstrate plain error on this issue beginning with its basic premise.

Finally, the damage award by the jury related to its finding of liability against Conoco on both tort and contract claims. Any award based on fraud, which we necessarily presume occurred, would support a separate award for punitive damages since, under Oklahoma law, different elements are required.

Accordingly, we remain unconvinced that Oklahoma courts would forbid punitive damages in addition to the statutory interest awarded by § 570.10 as an impermissible double penalty,[18] especially where, as here, the jury found the defendant liable on both breach of contract and several tort claims.

## II.     Did the Punitive Damages Exceed the Limit Defined by Oklahoma Law?

Conoco next asserts that the punitive damage award exceeds the limits imposed under Oklahoma law. Our review is limited to plain error because Conoco did not present this argument to the district court.

Okla. Stat. tit. 23, § 9.1(C) provides as follows:

Category II. Where the jury finds by clear and convincing evidence that:

---

[18]We note that Conoco's categorization of the statutory interest as a "penalty" does not exactly fit the circumstances of this case. Okland presented evidence at the punitive damages phase of trial regarding Conoco's use of the withheld funds. Okland's expert witness, Richard Metz, testified that Conoco's return on the wrongfully withheld PRC funds was between 16% and 22%. Appellant's App. Vol. IV at 1548-49. Thus, at least as to companies earning as high a rate of return as Conoco, the § 570.10 prejudgment interest does not *penalize* their wrongful withholding of funds.

1. The defendant has acted intentionally and with malice towards others;

. . . .

the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award exemplary damages in an amount not to exceed the greatest of:

a. Five Hundred Thousand Dollars ($500,000.00),
b. twice the amount of actual damages awarded, or
c. the increased financial benefit derived by the defendant or insurer as a direct result of the conduct causing the injury to the plaintiff and other persons or entities.

The trial court shall reduce any award for punitive damages awarded pursuant to the provisions of subparagraph c of this paragraph by the amount it finds the defendant or insurer has previously paid as a result of all punitive damage verdicts entered in any court of the State of Oklahoma for the same conduct by the defendant or insurer.

Id.

The instruction given to the jury in the punitive damages phase included the

following:

In no event should the punitive damages you award exceed the greater of $500,000.00, or twice the amount of actual damages you have previously awarded, or the increased financial benefit derived by Conoco as a direct result of the conduct causing the damage to Okland and other persons.

Appellant's App. Vol. I at 183. For purposes of awarding punitive damages, the

jury had already found during the first stage of trial there was clear and

convincing evidence that Conoco "acted intentionally and with malice towards

-31-

others including Okland." See supra note 2. This finding put the case in Category II under Okla. Stat. tit. 23, § 9.1(C), which limits punitive damages just as the instruction given to the jury indicated.

Conoco asserts that the jury should have been instructed that only subsections (a) and (b) of § 9.1(C) applied to the award of punitive damages and that it could not award punitives exceeding twice the amount of actual damages awarded. Directing us to no authority, it contends that Category II's third limitation on damages—the increased financial benefit derived by the defendant as a result of the conduct causing the injury to the plaintiff and other persons—is restricted to the increased benefit from a single act, not from multiple acts committed against multiple parties, and is, therefore, inapplicable in this case. Section 9.1 is a relatively new Oklahoma statute and neither the federal nor state courts have yet interpreted this new part of the statute.

We believe a plain reading of the statute manifests the legislature's intent that the "conduct causing the injury to the plaintiff and other persons" would include conduct committed during the same time period pursuant to a uniform policy. We do not think the language requires that the conduct be a single isolated event, nor that it is so restrictive as to preclude ongoing fraudulent conduct. One of the factors to be considered in awarding punitive damages, is in fact, the "duration of the misconduct and any concealment of it." Id. § 9.1(A).

The last paragraph of § 9.1(C) requires the trial court to reduce the punitive damage award "by the amount it finds the defendant or insurer has previously paid as a result of all punitive damage verdicts entered in any court of the State of Oklahoma for the same conduct by the defendant or insurer." This, too, indicates that the statute was intended to allow punitive damages as a penalty for a general policy or decision that harmed many persons.

Okland presented evidence that Conoco had defrauded others as well as Okland in adopting a policy by which it would enrich itself by surreptitiously excluding ten cents from the resale price of each unit of gas. See, e.g., Appellant's App. Vol. III at 924-33, 939-45, 982-84, 1027-33; Appellee's Supplemental App. at 74, 87, 90, 91, 223-26. Okland also presented evidence, without objection, that Conoco reaped between $41.7 and $73 million from this decision. Appellant's App. Vol. IV at 1546-50. We therefore conclude that the jury could have awarded the $3 million in punitive damages even if, as Conoco argues, the actual damage award for tort was substantially less than the $1,559,633.12 awarded as actual damages.

**III. Fraud Claims Based on Communications with Mr. Faulkner and Gas Purchase Statements**

Conoco next argues that because its representative, Tom Faulkner, was not involved in the formation of all of the contracts, Okland's allegation that Mr. Faulkner fraudulently induced Okland's acceptance of the contracts cannot support the full amount of actual damages. It also argues that the gas purchase statements cannot support the entire actual damage award insofar as tax reimbursement amounts were included because Conoco's statements to Okland listed "0.00" as the amount of tax reimbursement paid, and, therefore, Okland could not have reasonably relied on the statements even if they were fraudulent.

As for the first argument, we note that Mr. Faulkner's involvement with the contracts included not only the formation of some of them, but also the later amendment of others. See, e.g., Appellant's App. Vol. I at 240, 346-67; Appellee's Supplemental App. at 77-79, 82, 84-86. More to the point, Mr. Faulkner's involvement was only part of the evidence that Okland presented to support its fraudulent inducement and deceit claims. As explained above, the jury's verdict as to those claims was based on substantial evidence. The same evidence supporting the finding of liability also supports the actual damage award, and we need not recite that evidence again.

As for the tax reimbursement statement claims, we note that even during part of the time Conoco was paying the tax reimbursements in full, the statements

listed "0.00" as the amount of reimbursements paid, and Okland continued to rely on Conoco to pay the full tax reimbursement because there had been no change in the statements. Appellant's App. Vol. I at 191-98, Vol. III at 1006-11; Appellee's Supplemental App. at 72. Again, other evidence referred to previously in combination with this evidence supports the actual damage award.

Whether we decide these contentions under the strict plain error standard, which is appropriate because they were not raised below, or the conventional clearly erroneous or lack of evidence standard, see Brown v. Presbyterian Healthcare Servs., 101 F.3d 1324, 1330 (10th Cir. 1996), cert. denied, 117 S. Ct. 1461 (1997), Conoco's arguments on these points are unavailing. The entire actual damages claim need not be based on tort to support the punitive damage award. In addition, any one tort theory need not support the entire portion of the actual damages claim attributable to tort. The jury found for Okland on all of the tort and contract claims presented to it. Therefore, the actual damages claim may be supported by any of the alternative tort theories or by a combination of them, and the evidence supports the award.

**IV.    Jury Instructions on Silence and Duty to Disclose**

Conoco alleges that the court erred in giving Jury Instructions 28 and 32 on

Duty to Disclose[19] and Silence,[20] respectively. It also argues that the jury's

finding against Conoco based on these instructions cannot support the tort

damages. Conoco properly objected to these Instructions. Appellant's App. Vol.

III at 1128-32, Vol. IV at 1458.

The determination of the substance of a jury instruction in a
diversity case is a matter of state law, but the grant or denial of

---

[19]Instruction No. 28, Appellant's App. Vol. I at 164, is as follows:

### DUTY TO DISCLOSE

When dealing with another, a party has a duty to disclose a material
fact if it is known to that party and the party knows the fact is peculiarly
with its knowledge and the other party is not in a position to discover the
fact for itself.

A party also has a duty to disclose a material fact if it is known to
that party and when the party states other facts which are true but which the
party knows will create a false impression of the actual facts in the mind of
the other party if the material fact is not disclosed.

[20]Instruction No. 32, Appellant's App. Vol. I at 167, is as follows:

### SILENCE

You are instructed that silence as to a material fact is not necessarily
equivalent to a false representation or misrepresentation. It only becomes
so if under the circumstances there is an affirmative duty on one party to a
contract to speak, and that party remains silent to his benefit and to the
detriment of the other party to the contract.

In determining whether there is a duty to speak, you may consider
the situation of the parties and the subject of the matters with which they are
dealing.

tendered instructions is governed by federal law and rules.  The admission or exclusion of a particular jury instruction is within the sound discretion of the trial court.  We review the trial court's conclusions on legal issues de novo, however, and need not defer to its decisions on questions of law.

City of Wichita v. United States Gypsum Co., 72 F.3d 1491, 1494-95 (10th Cir. 1996) (citations omitted).

In addition, in reviewing jury instructions we consider them as a whole and ask whether they accurately stated the governing law and provided the jury with an ample understanding of the issues and the applicable standards.  Brown v. Wal-Mart Stores, Inc., 11 F.3d 1559, 1564 (10th Cir. 1993).  The paramount questions are whether the jury was misled and whether the instructions provided an understanding of the issues and explained the jury's duty to determine those issues.  Estate of Korf v. A.O. Smith Harvestore Prods., Inc., 917 F.2d 480, 484 (10th Cir. 1990).  Therefore, we will reverse the district court only if an erroneous instruction is prejudicial in light of the record as a whole.  Mason v. Texaco, Inc., 862 F.2d 242, 246 (10th Cir. 1988).

Conoco argues that even though the district court did not state its reason for refusing to submit Okland's constructive fraud claim to the jury, it did so because it did not believe there was a fiduciary relationship between Okland and Conoco.  Consequently, contends Conoco, the court should not have instructed the jury as

to silence and misstated the duty to disclose because silence by one party does not permit a finding of fraud or deceit in the absence of a fiduciary relationship.

Under Oklahoma law, "'[i]n determining whether there is a duty to speak, consideration must be given to the situation of the parties and matters with which they are dealing.'" Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp., 24 F.3d 1190, 1195 (10th Cir. 1994) (quoting Silk v. Phillips Petroleum Co., 760 P.2d 174, 179 (Okla. 1988)).  Those considerations may require either (1) an absolute positive duty to speak based on a fiduciary or similar duty, or (2) a duty to speak arising from a partial disclosure.  See Thrifty Rent-A-Car Sys., 24 F.3d at 1195.  The second duty is imposed because the speaker is "'under a duty to say nothing or to tell the whole truth.  One conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud, even though his statement is true as far as it goes, since such concealment is in effect a false representation that what is disclosed is the whole truth.'"[21]  Id. (quoting Deardorf v. Rosenbusch, 206 P.2d 996, 998 (Okla. 1949)); see also Varn v. Maloney, 516 P.2d 1328, 1332 (Okla. 1973); Ragland v. Shattuck Nat'l Bank, 36 F.3d 983, 991-92 (10th Cir. 1994); Okla. Stat. tit. 76, § 3 (Deceit may be found, inter alia, by the "suppression of a fact by one who is bound to disclose it, or who

---

[21]It is important to note that Okland presented evidence and the jury found Conoco liable as to deceit by false representation and fraud in the inducement, based on Conoco's *overt* misrepresentations, not simply based on silence.

gives information of other facts which are likely to mislead for want of communication of that fact."). So even in the absence of a fiduciary or similar relationship, the duty to speak often arises. See Ragland, 36 F.3d at 991-92; Uptegraft v. Dome Petroleum Corp., 764 P.2d 1350, 1353-54 (Okla. 1988).

Considering the evidence presented in this case, the district court properly instructed the jury that it could consider the situation of the parties and the subject of the matters with which they are dealing and find that Conoco breached its duty to disclose under those circumstances. Submission of Instructions 28 and 32 was therefore not error.

Substantial evidence also supported the jury's finding of deceit by concealment or nondisclosure and the damages it awarded thereon. The jury clearly heard evidence of the circumstances of the parties, of the subject matter of the contracts, and of Conoco's intent to deceive and to commit fraud. The district court's denial of Conoco's motion for judgment as a matter of law was not error.

## V.     Admission of Damage Exhibits

Conoco sought to introduce Exhibit 182 and to inquire about it during its cross-examination of Steven Wetwiska, the President of Okland. Okland objected to the exhibit based on relevance because it said the well and its associated contract (No. 3536) were not involved in the case. Appellant's App. Vol. III at

801.  The court sustained the objection.  Later in the trial, Okland offered several damage summaries as exhibits that included Contract No. 3536 in the damage calculations.  Id. Vol. I at 370-73, Vol. II at 660-61, Vol. III at 1039-48.  Conoco objected, arguing that because Okland previously had contended the contract was not involved in the case, Okland's exhibits should not be admitted.  Id. Vol. III at 1039-40.  Okland's expert, Richard Metz, testified that the well was included in the calculations because Conoco had included it in its own calculations, and Mr. Metz had then used the Conoco figures as to the amount of the damages on that well.  Id. at 1040.  The court overruled the objections and allowed the exhibits into evidence.

On appeal, Conoco contends that once Okland argued the contract was not relevant, it should have been precluded from taking an inconsistent position later by introducing exhibits containing that contract.  Conoco does not claim that Contract No. 3536 was irrelevant or that it was not at issue in this case.  Nor did Conoco seek at trial to reexamine Mr. Wetwiska as to that particular contract.  In addition, exhibits introduced by Conoco later in the trial included Contract No. 3536 in them.  See, e.g., Appellee's Supplemental App. at 238.

We review the district court's evidentiary rulings for abuse of discretion.  Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995).  Conoco alleges that the court abused its discretion by failing to employ the doctrines of judicial estoppel

and preclusion against inconsistent positions in judicial proceedings to exclude Okland's damage exhibits.

In a diversity case, we look to state law to determine whether and how to apply these doctrines. Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc., 874 F.2d 1346, 1363 (10th Cir. 1989); Ellis v. Arkansas Louisiana Gas Co., 609 F.2d 436, 440 (10th Cir. 1979) (applying Oklahoma law). Under Oklahoma law, "a party who knowingly and deliberately assumes a particular position is estopped from assuming an inconsistent position to the prejudice of the adverse party. Judicial estoppel applies only to prevent the advancement of inconsistent positions vis-a-vis matters of fact." Parker v. Elam, 829 P.2d 677, 680 (Okla. 1992) (footnote omitted).

We find no evidence in the record to suggest that Okland knowingly and deliberately assumed contradictory positions as to the relevance of Contract No. 3536. More important, we find no evidence of prejudice to Conoco. When Okland objected to Conoco's exhibit based on relevance, Conoco's counsel responded: "This is simply one of the series of instruments signed by the parties, and we're just trying to establish the sequence of events." Appellant's App. Vol. III at 801. Conoco does not show us how the exclusion of Contract No. 3536 has harmed it, nor did it ever seek to recall Mr. Wetwiska or ask the district court to admit the exhibit after the court allowed Okland's exhibits into evidence.

-42-

Accordingly, this is not a case in which the doctrines should apply, and the district court did not abuse its discretion in admitting Okland's damage exhibits.

## VI.     Propriety of Okland's Questioning of Conoco's Representative

Conoco also claims that the district court erred by permitting Okland to ask Conoco's representative, Bill Boone, in the punitive damage phase, whether he would admit Conoco's conduct was fraudulent and deceitful.  <u>See</u> Appellant's App. Vol. IV at 1525-28.  Conoco argues that allowing this type of questioning is repugnant to the legal system because it puts Conoco in the Catch-22 situation of either waiving its rights on appeal and in other pending cases or subjecting itself to punitive damages by not accepting liability.  This questioning was improper and constitutes misconduct, argues Conoco, because it incited, inflamed, and prejudiced the jury against Conoco, causing it to render a larger punitive damage award based on irrelevant issues.  Because Conoco did not object to this line of questioning in the district court, we review it only for plain error.  Thus, we must be convinced that the error "almost surely affected the outcome of the case" because the prejudice is such that the fairness of the trial is threatened.  <u>Angelo v. Armstrong World Indus., Inc.</u>, 11 F.3d 957, 960-61 (10th Cir. 1993) (quotation omitted).

Financial status is not the only proper subject of evidence at the punitive damage phase of trial, as Conoco asserts. Under Oklahoma law, the jury may "give damages for the sake of example and by way of punishing the defendant based upon the following factors:"

> the seriousness of the hazard to the public arising from the defendant's misconduct; the profitability of the misconduct to the defendant; *the duration of the misconduct and any concealment of it; the degree of the defendant's awareness of the hazard and of its excessiveness; the attitude and conduct of the defendant upon discovery of the misconduct or hazard;* in the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and the financial condition of the defendant.

Okla. Stat. tit. 23, § 9.1(A), (E) (emphasis added). Although the inquiries made by Okland touched on Conoco's *post-verdict* attitude upon the *jury's* determination of the misconduct, we do not think the exchange so detrimental as to require a retrial as to punitive damages. Moreover, at the time of the alleged misconduct, the jury had already found that Conoco acted maliciously and intentionally in defrauding and deceiving Okland and had awarded substantial actual damages. See generally Davis v. Mutual Life Ins. Co., 6 F.3d 367, 387 (6th Cir. 1993). Although the district court may have properly forbidden the line of questioning had there been an objection, Conoco has not met the heavy burden of proving plain error.

## VII. Jury Instruction on Fraud

Conoco claims that the district court's Instruction No. 29 on fraud was improper because it did not advise the jury of the presumptions and contract interpretations to which Conoco was entitled as a matter of law. This issue was properly raised at trial, Appellant's App. Vol. IV at 1458, 1469, so we review the denial of the specific instruction for abuse of discretion, but we review de novo the correctness of the legal standards in the instructions as a whole. Harrison v. Eddy Potash, Inc., 112 F.3d 1437, 1442 (10th Cir. 1997), petition for cert. filed, 66 U.S.L.W. 3137 (U.S. Aug. 6, 1997) (No. 97-232).

The district court's Instruction No. 29 informed the jury: "You are instructed that deceit as well as fraud is never presumed." Appellant's App. Vol. I at 165. Conoco's requested Instruction No. 17 went further by adding the following language: "You should assume that people are fair and honest in their dealings until the contrary appears from the evidence. If a transaction which is called into question is equally capable of two interpretations, one honest and the other fraudulent, it should be found to be honest." Id. at 14.

Although the proposed instruction may not have been inappropriate if given, see James v. State Farm Mut. Auto. Ins. Co., 810 P.2d 365, 372 (Okla. 1991), the language essentially restates the burden of proof in a fraud or deceit case and the accompanying elements of those claims. The court gave the jury

those instructions, Appellant's App. Vol. I at 148, 150, 160, 162, 166, and we see no abuse in denying this particular instruction.

**VIII. Jury Instruction Regarding FERC Order 94**

At trial, Conoco contended that FERC Order 94—which prior to deregulation in 1985, authorized sellers, under certain conditions, to recover PRC's in addition to the gas sale price fixed by law—authorized Conoco to exclude PRC's after deregulation under the language of the gas contracts. Conoco introduced exhibits and testimony explaining Order 94, its compliance with the order, and its belief that the order permitted it to deduct the ten cents per unit it deducted here. See Appellant's App. Vol. IV at 1156-57, 1237-45; Appellee's Supplemental App. at 290-93. Okland disputed Conoco's compliance with the order and argued that the order could not have authorized the exclusions after deregulation. See Appellant's App. Vol. III at 924-35, 980-84, 989-90, 1037-38; Appellee's Supplemental App. at 170-71.

At the jury instruction conference, Conoco asked the court to give proposed Instruction No. 10, which explains Order 94 as follows:

FEDERAL REGULATION

At the time plaintiff and defendants first entered into their contracts, they were both subject to regulation by the Federal Energy Regulatory Commission ("FERC"). The rules adopted by FERC authorized defendant to recover production related costs of up to

$0.15 per thousand cubic feet (MCF) of gas from defendant's purchasers retroactive to July, 1980.

Appellant's App. Vol. I at 13. The district court did not err in refusing to give the instruction. The instruction is correct in stating that the parties were subject to regulation at the time of the initial contract formation. However, the rest of the instruction would have misled the jury because it implies both that Conoco actually met the requirements of the order and also that the order did, in fact, authorize Conoco to recover PRC's under the contracts after deregulation. The instruction would not have aided the jury in evaluating the impact of Order 94 on the case but would have merely confused the issues.

## IX. Expert Testimony as to Conoco's Intent

Finally, Conoco argues that the district court erred in allowing Okland's expert, Taylor Yoakam, to testify as to Conoco's intent in entering into the contracts because only the testimony of a person with direct and personal knowledge of the facts in controversy is competent to so testify.[22] Apparently, the

---

[22]Some of the testimony Conoco complains of is as follows:

Q:    (By Mr. Barnes)  Could you please explain to us, sir, what the facts
       have shown you concerning what Conoco was doing?
A:    Well—
Q:    Please stay away from any pejorative terms.
A:    Alright.  I have been in this business for 25 years, and I've seen a lot

(continued...)

district court partially granted Conoco's motion in limine to prohibit Okland's

expert witness from testifying as to the parties' interpretation of the contracts, but

ruled that it would allow the witness to discuss the meaning of the contracts'

---

[22](...continued)
> of things happen between producers and pipeline companies, and I spend my life and living trying to protect independent producers from things that pipeline companies do.
> We seem to have a situation here where the pipeline company had lost $4 million and they wanted to find out some way that they could get it back.

MR. NELON: Objection, Your Honor. He's speculating as to what Conoco thought and intended.

THE COURT: Overruled.

. . . .

Q:  (By Mr. Barnes) Sir, what is the element of — well, let me rephrase that. How is the element of trust important in the gas marketing business?

A:  Well, as I said in my deposition, it has to do with honesty and integrity in the industry. If we don't have some trust and honesty and integrity, we're going to be in bad, bad shape.
> Unfortunately, I think we've reached that a great deal over the last ten years, that everybody was losing money in the oil and gas business in the late—beginning in the late 80s—or the early 80s, and I lived through that, I was with a company that lived through it and so everybody was pinching their pennies, everybody was trying to figure out a way to stay alive.
> So in doing so, it seems like that they may have gotten a little bit over—Conoco just maybe went a little bit overboard in figuring out a way to make their plant profitable, and they elected to do so out of the producer's pocket.

MR. NELON: I object. Move to strike all of this witness' testimony.

THE COURT: Overruled.

Appellant's App. Vol. III at 939-41.

terms. Appellant's Br. at 48 & n.25; Appellee's Br. at 48-49. At trial, the court sustained several objections as to Conoco's intent in the formation of the contract, but ultimately allowed the disputed testimony to come in.

We review a district court's admission of expert testimony for abuse of discretion, and "we will not reverse the district court without a 'definite and firm conviction that [it] made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" United States v. Messner, 107 F.3d 1448, 1454 (10th Cir. 1997) (citations omitted). Moreover, "[a] defendant bears the burden of demonstrating that the court's erroneous admission of evidence 'affected [his or her] substantial rights.'" Messner, 107 F.3d at 1054-55 (quoting K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1155-56 (10th Cir. 1985)).

Under both federal law and Oklahoma law, expert witnesses in civil cases may testify in the form of an opinion or inference as to ultimate issues to be decided by the trier of fact if the testimony is not otherwise objectionable. Fed. R. Evid. 702, 704; Okla. Stat. tit. 12, §§ 2702, 2704; Williams Natural Gas Co. v. Perkins, 952 P.2d 483, 490 (Okla. 1998); Gabus v. Harvey, 678 P.2d 253, 255-56 (Okla. 1984). The testimony must assist the trier of fact in understanding the evidence or in determining a factual issue. Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 647-48 (10th Cir. 1991); Gabus, 678 P.2d at 255-56. Generally, an expert may not state his or her opinion as to legal standards nor may he or she

-49-

state legal conclusions drawn by applying the law to the facts. A.E. ex rel. Evans v. Independent Sch. Dist. No. 25, 936 F.2d 472, 476 (10th Cir. 1991); Gabus, 678 P.2d at 255-56 & n.2.

The portions of Mr. Yoakam's testimony Conoco challenges concern Conoco's fraudulent actions in deciding to covertly keep a portion of the resale price from Okland. The testimony does not merely seek to explain Conoco's intent in forming the contract. Mr. Yoakam testified about what he thought Conoco was doing in light of his experience in the specialized field of oil and gas. He did not simply tell the jury that the conduct was fraudulent; he did not state any legal conclusions; and he did not testify as to the legal elements necessary to establish fraud. See United States v. Oles, 994 F.2d 1519, 1523 & n.2 (10th Cir. 1993). In numerous cases we have held that the admission of similar testimony was not an abuse of discretion. See, e.g., United States v. Orr, 68 F.3d 1247, 1252 (10th Cir. 1995) (testimony that defendant's fraud scheme would only work if it continued to find "a bank sucker"); Oles, 994 F.2d at 1522-23 (testimony that defendant's actions constituted "check kiting"); Wheeler v. John Deere Co., 935 F.2d 1090, 1100-01 (10th Cir. 1991) (testimony that machinery was more dangerous than anticipated by ordinary consumers); Ponder v. Warren Tool Corp., 834 F.2d 1553, 1557 (10th Cir. 1987) (testimony as to cause of accident).

We do not believe that the jury was "prevailed upon to abdicate its function or responsibility for reaching an independent judgment on the ultimate issues in the case." Karns v. Emerson Elec. Co., 817 F.2d 1452, 1459 (10th Cir. 1987) (quotation omitted). Mr. Yoakam explained the basis for his opinions in sufficient detail to permit the jury to independently evaluate his conclusions. See McEwen v. City of Norman, 926 F.2d 1539, 1545 (10th Cir. 1991). Moreover, the jury was instructed that it could disregard the expert opinion entirely. Appellant's App. Vol. I at 143. We, therefore, conclude that the court did not abuse its discretion in permitting Mr. Yoakam's testimony.

## X.    Okland's Costs

In its related appeal, Okland seeks to recover $41,529.59 for costs associated with its successful lawsuit against Conoco. Okland filed in the district court a bill of costs, which the court clerk granted and denied as follows:

| Costs | Requested | Awarded | Seeking on Appeal |
|---|---|---|---|
| Expert Witness Fees | $23,380.19 | $    0.00 | $23,380.19 |
| Court Reporter Transcript Fees | $ 9,253.06 | $ 4,588.45 | $ 4,664.61 |
| Photocopies | $21,343.70 | $12,543.38 | $ 8,800.32 |

| Costs | Requested | Awarded | Seeking on Appeal |
|---|---|---|---|
| Other Miscellaneous Costs[23] | $ 3,597.11 | $ 0.00 | $ 3,597.11 |
| Fees of the Clerk | $ 79.00 | $ 79.00 | $ 0.00 |
| Fees for Witnesses | $ 50.00 | $ 50.00 | $ 0.00 |
| Total | $57,703.06 | $ 17,260.83 | $ 40,442.23 |

See Appellant's App. at 79-80, 199. The district court reviewed the briefs filed in conjunction with Okland's motion to review taxation of costs by the clerk and concluded that the clerk's assessment of costs should not be disturbed. Okland appeals that decision and seeks an additional $1,087.36, which it claims it incurred subsequent to its filing of the bill of costs.

During the trial, Okland elected to submit $52,670.75 in expert witness fees and expenses as damages, not as costs, relying on Okla. Stat. tit. 52, § 570.14. Conoco did not object to that election, failing to argue as it does here that federal, not state law applies. Rather, Conoco objected on the basis that the evidence should not be admitted until liability had been established. Appellant's App. at 318-19.

---

[23]These costs include travel, postage, telephone, faxes, Westlaw, and mileage. Nearly all of these costs were incurred by Okland's expert witness. Appellant's App. at 79-80, 182-199.

Given the opportunity to present the fees to the jury and having chosen that route, Okland is precluded from seeking additional expert witness fees as costs. It had the opportunity to submit *all* of its expert witness fees at trial as damages, and in failing to do so, it has lost the opportunity to recover additional fees in the form of costs. The district court's judgment entered on November 25, 1996, at the close of the case awarding Okland its costs was only for those costs provided by 28 U.S.C. § 1920. Therefore, the district court did not err in denying an award for expert witness fees.

The district court did not explain its partial denial of internal photocopies, video depositions,[24] and other miscellaneous costs. Although we have stated that we will remand if the court does not provide an adequate explanation of its denial of costs, see Serna v. Manzano, 616 F.2d 1165, 1168 (10th Cir. 1980) ("Unless an appellate court knows why a trial court refused to award costs to the prevailing party, it has no real basis upon which to judge whether the trial court acted within the proper confines of its discretion."); see also Cantrell v. International Broth. of Elec. Workers, 69 F.3d 456, 459 (10th Cir. 1995) (citing with approval In re Two Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 994 F.2d

_____

[24]We recognize our decision in Tilton v. Capital Cities/ABC, Inc., 115 F.3d 1471 (10th Cir. 1997), which holds that district courts have discretion to award as costs videotaped depositions. However, our review of the record indicates that the court did not abuse that discretion in denying such costs.

956, 963 (1st Cir. 1993) (applying the rule to a partial denial of costs)), the record here is developed enough for us to conclude that such a remand would be an unfruitful expenditure of judicial resources. After reviewing the record, we conclude that the district court did not abuse its discretion in partially denying the costs. We also refuse to entertain a review of Okland's tardy application for additional costs.

Okland asks for attorneys fees and costs incurred on appeal. We grant Okland's motion for costs and fees as to Appeal No. 97-6004 only. Pursuant to statute and this court's rules, Okland should submit its costs to the clerk of this court. We remand to the district court for a determination of the attorneys fees to be allowed on this appeal.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court in all respects on both appeals and REMAND to the district court for a determination of attorneys fees to be awarded on this appeal.